*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0122P (6th Cir.)
File Name: 00a0122p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

GWENDOLYN T. GRAHAM-HUMPHREYS,
    *Plaintiff-Appellant/*
    *Cross-Appellee,*

       *v.*

MEMPHIS BROOKS MUSEUM
OF ART, INC.,
    *Defendant-Appellee/*
    *Cross-Appellant.*



Nos. 98-5971/6098

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 96-02639—Jon Phipps McCalla, District Judge.

Argued: September 22, 1999

Decided and Filed: April 6, 2000

Before: KRUPANSKY and NORRIS, Circuit Judges;
GWIN,* District Judge.

_____

  *The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

1

---

**COUNSEL**

**ARGUED:** G. Hite McLean, Jr., Memphis, Tennessee, for Appellant.  Martin F. Thompson, ALLEN, SCRUGGS, SOSSAMAN & THOMPSON, Memphis, Tennessee, for Appellee.  **ON BRIEF:**  G. Hite McLean, Memphis, Tennessee, for Appellant.  Martin F. Thompson, Kirk A. Caraway, ALLEN, SCRUGGS, SOSSAMAN & THOMPSON, Memphis, Tennessee, for Appellee.

---

**OPINION**

---

KRUPANSKY, Circuit Judge.  In case no. 98-5971, the plaintiff-appellant Gwendolyn T. Graham-Humphreys ("Graham-Humphreys") has appealed the district court's summary dismissal, as barred by statutory limitations, of her gender-based employment discrimination complaint anchored in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").  In case no. 98-6098, the defendant-appellee Memphis Brooks Museum of Art, Inc. ("Brooks" or "the museum") has cross-appealed the trial court's rejection of its motions (1) to quash the plaintiff's summons for technical defects and (2) to dismiss the action for failure to timely serve valid process; and has concordantly challenged the trial court's retroactive curative amendment of the deficient summons.

On March 4, 1994, Brooks retained the plaintiff, an unmarried woman, to serve as its Deputy Director of Corporate Relations.  In that capacity, Graham-Humphreys was responsible for promoting corporate financial sponsorship of the museum.  While so employed and still single, the plaintiff became pregnant.  Subsequently, on January 3, 1995, she married Anderson Humphreys.  Three days later, on January 6, 1995, Graham-Humphreys gave birth

suffered by the plaintiff were self-induced and solely the product(s) of her own neglect, carelessness, inattentiveness, indifference, dereliction, and/or remissness in the exercise of minimal diligence.[12]    *See Banks*, 855 F.2d at 327 (propounding that a litigant who seeks equitable tolling "must come with clean hands.").

Accordingly, because the district court correctly dismissed Graham-Humphreys' complaint as time barred, this review has no occasion to address the defendant museum's alternate argument, advanced via cross-appeal, that her complaint should have been dismissed for insufficiency of process.

Therefore, in case no. 98-5971 (the plaintiff's appeal), the district court's dismissal of the plaintiff's complaint as barred by limitations is **AFFIRMED**.  Case no. 98-6098 (the defendant's cross-appeal) is **DISMISSED AS MOOT**.

---

[12]The arguable absence of any significant prejudice to the defendant if this court were to permit the plaintiff's filing out of rule is immaterial, because no other factor supports the plaintiff's equitable tolling posture. *See Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988) ("although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify tolling is identified, it is not an independent basis for invoking the doctrine.") (brackets and ellipse omitted) (*quoting Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984)).

action prior to the June 10, 1996 expiration of limitations. *See Scholar v. Bell*, 963 F.2d 264, 268 (9th Cir. 1992) (denying equitable tolling because the plaintiff had 75 days after actual receipt of her RTS notice to file a civil complaint).

At any rate, even a *pro se* litigant, whether a plaintiff or a defendant, is required to follow the law. In particular, a willfully unrepresented *plaintiff* volitionally assumes the risks and accepts the hazards which accompany self-representation. *See McNeil v. United States*, 508 U.S. 106 (1993), wherein the Supreme Court commented that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *Id*. at 113. This circuit has remarked that "[i]t is well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991) (*per curiam*). *Accord, United States v. Baker*, 197 F.3d 211, 218 (6th Cir. 1999) (reaffirming, in sustaining a criminal defendant-appellant's conviction, "the centuries-old maxim that 'ignorance of the law is no excuse'" and remarking that, in most circumstances, "[t]o allow an ignorance of the law excuse would encourage and reward indifference to the law."), *cert. denied*, 2000 WL 189836 (U.S. Feb. 28, 2000) (No. 99-8027).

In conclusion, the plaintiff's knowledge or suspicion that the EEOC had issued an RTS letter which the Postal Service attempted to deliver to her on March 8, 1998, her actual knowledge that ninety-day limitations began running upon her receipt of notice from the EEOC of her right to sue, her perplexing failure to inaugurate her lawsuit within the 74 days remaining on her limitations term following her physical acceptance of her RTS letter, her unexcused dilatory retrieval of that document from the post office, her listless efforts to secure and retain a continuity of necessary professional legal assistance, and her apparent contempt for proper court procedures and other legal requisites, marshaled to forestall equitable tolling, because any disadvantage(s) allegedly

to a daughter. Immediately thereafter, the plaintiff began a company-authorized voluntary twelve-week unpaid maternity leave of absence.

During the second week of February, 1995, while on maternity leave, Graham-Humphreys received a telephone call from Chuck Beegle ("Beegle"), the museum's Chief Operations Officer. He informed her that, because available funding had been exhausted, her position with the museum had been eliminated. Nonetheless, on April 3, 1995, upon the expiration of her scheduled twelve-week absence, Graham-Humphreys reported for work at the museum. Brooks' Director, E.A. Carmean ("Carmean"), then personally confirmed that her former post at the museum no longer existed. Nevertheless, within several days of that conversation, Beegle counseled Graham-Humphreys, via telephone, that she should "sit tight" while the museum resolved whether she would eventually be recalled from "layoff" status.

On approximately April 16, 1995, Graham-Humphreys discovered, at the front door of her residence, a copy of an unfavorable written assessment of her job performance, which had been executed by Carmean, purportedly on December 30, 1994. That report revealed that the plaintiff had scored only 27 quality points on a 60 point scale. The reviewer had opined that "deficiencies [were] evident" in the plaintiff's judgment, initiative, reliability, perseverance, and stability; and additionally noted her failure to recruit new commercial donors. At no time thereafter did Brooks restore the plaintiff's employment.

On August 24, 1995, Graham-Humphreys instigated a formal administrative charge of employment discrimination against the museum before the United States Equal Employment Opportunity Commission ("EEOC") and the Tennessee Human Rights Commission ("THRC"), wherein she alleged that "I believe I have been discriminated against because of my sex, female and pregnancy in violation of Title

VII of the Civil Rights Act of 1964, as amended." However, the EEOC/THRC took no action on her complaint. On February 28, 1996, the claimant requested, in writing, that the EEOC issue her a Right-to-Sue ("RTS") notice. 42 U.S.C. § 2000e-5(f)(1). The plaintiff has conceded that she expected to receive that official document via United States mail. Additionally, her February 28, 1996 letter to the EEOC disclosed that her attorney, Gail Mathes, would soon request a copy of her claim file.

In response to her request, the EEOC on March 7, 1996 generated Graham-Humphreys' RTS memorial, and posted it, via United States certified mail, to her residential address of record at 4741 Mint Drive, Memphis, Tennessee 38117 ("Mint Drive"). Graham-Humphreys resided at that location at least between February 1996 through March 1996. On Friday, March 8, 1996, Postal Carrier Danny Stafford unsuccessfully attempted delivery of the complainant's RTS letter at her Mint Drive address. The mailman then deposited, at that residence, a form Postal Service attempt-to-deliver notification, which stated that a certified letter addressed to the plaintiff could be claimed at the local post office. That postal notice related the address, telephone number, and business hours of the nearby branch facility. Graham-Humphreys received Stafford's advisory notice on March 8, 1996, but she took no responsive action.

Five days later, on Wednesday, March 13, 1996, in conformity with standard Postal Service practices, the letter handler deposited a second, and final, notice of attempted delivery at Mint Drive. That document explicitly cautioned that failure to claim the certified envelope on or prior to Saturday, March 23, 1996, would prompt its return to the sender. Graham-Humphreys received that notification on March 13, 1996. Ignoring that message as well, the complainant neglected to retrieve her certified letter by the stated March 23, 1996 deadline.

statute of limitations:  1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

*Truitt*, 148 F.3d at 648 (citation omitted).

However, the *Truitt* court did not indicate that its list was comprehensive, nor that each of the five considerations would be material in all cases. Rather, "[t]he propriety of equitable tolling must necessarily be determined on a case-by-case basis." *Id*. (citation omitted).

The district court did not abuse its discretion by rejecting the plaintiff's request for equitable tolling. As developed above, the record evidence on summary judgment review, when construed most favorably on behalf of the plaintiff (*see* note 7 above), reflected that she had constructive notice, within the March 8 through March 13, 1996 mailing period, that the EEOC had issued her RTS letter. Moreover, as previously illustrated, the plaintiff's employment obligations did not impede her ability, in the exercise of reasonable diligence, to promptly accept her RTS notice.

Prior to retrieving her RTS document, Graham-Humphreys knew that she was required to commence her judicial complaint within a finite period. Irrespective of whether the plaintiff had the benefit of legal counsel or was proceeding *pro se*, a reasonably cautious and prudent Title VII claimant in Graham-Humphreys' posture would, as a modest precaution, assume that limitations began passing on or near the earliest potential date, and would consequently initiate her civil action within ninety days of her receipt of the postman's note which had apprized her of the certified letter which later proved to be her RTS notice. The claimant had abundant time (74 days) following the EEOC's March 28, 1996 actual release to her of the RTS notice in which to institute her court

[an] erroneous legal standard." *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995) (quotations and citations omitted).

Graham-Humphreys has protested that the lower court abused its discretion by declining to toll limitations, because (1) her employment commitments allegedly contributed to her failure to timely collect her certified mail; (2) both the EEOC's RTS notice, and the EEOC-composed memorial of her acceptance of that document, pronounced that the ninety-day filing timetable commenced to accrue upon her "receipt" of the RTS notification, which she understood to mean her taking actual physical custody of that document; and (3) she had purportedly acted without professional legal advice regarding the limitations question.

The federal courts sparingly bestow equitable tolling. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988); *Brown v. Mead Corp.*, 646 F.2d 1163, 1165 (6th Cir. 1981). Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. *See Baldwin County*, 466 U.S. at 151 ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); *see also Johnson v. United States Postal Service*, 64 F.3d 233, 238 (6th Cir. 1995), which directed that a petitioner's failure to satisfy a deadline caused by "garden variety neglect" cannot be excused by equitable tolling. (*Citing Irwin*, 498 U.S. at 96). Absent compelling equitable considerations, a court should not extend limitations by even a single day. *Johnson v. United States Postal Service*, 863 F.2d 48 (Table), 1988 WL 122962, at *3 (6th Cir. Nov. 6, 1988).

The Sixth Circuit has decreed:

We have identified five factors to consider when determining the appropriateness of equitably tolling a

Accordingly, on Tuesday, March 26, 1996, the Postal Service returned it, stamped "unclaimed," to the issuing EEOC office. Two days later, on Thursday, March 28, 1996, as a courtesy, an EEOC employee alerted Graham-Humphreys by telephone that her RTS document had been issued and posted, but had been returned as an unclaimed certified dispatch.[1] Later that day, the plaintiff personally appeared at the EEOC district headquarters to accept her RTS authorization.[2] Upon the EEOC's release of that document to

---

[1] Three days earlier, on Monday, March 25, 1996, at Graham-Humphreys' behest, her attorney Mathes had in writing requested the EEOC's Memphis office to send her all documents within the plaintiff's claim file. In response, the EEOC promptly forwarded the requested documentation to Mathes, which included a reproduction of its March 7, 1996 certified RTS notice addressed to the plaintiff.

[2] The plaintiff has not denied that she had numerous opportunities to take possession of her certified delivery prior to its return to the EEOC's Memphis office. During March 1996, the local postal depot operated from 8:30 a.m. to 5 p.m. on weekdays and from 10 a.m. to 2 p.m. on Saturdays. During that same period, Graham-Humphreys typically worked from 10 a.m. to 4 p.m. on weekdays and did not work on Saturdays. Additionally, record proof disclosed that Graham-Humphreys' flexible schedule during March 1996 permitted her, on occasion, to begin work later than 10 a.m., or to depart her workplace earlier than 4 p.m.. Furthermore, her immediate retrieval of the certified mailing on March 28, 1996, the same day as the EEOC's telephonic advisory that her RTS letter had been returned to the district headquarters, strongly implies that, if she had so elected, she could have claimed that letter within the five day grace period for mailing. At deposition, the plaintiff conceded that no emergency or other impediment obstructed her ability to claim her mail within the designated time frame.

Moreover, the plaintiff acknowledged that she knew, or at least suspected, upon receiving the first advisory of attempted delivery on March 8, 1996 that the certified package which awaited her contained her RTS notice, and candidly admitted that she had no justification or excuse for not retrieving it. She testified, "they attempted to deliver it to me. And I don't know why I didn't go over there and get it." Graham-Humphreys also admitted that she knew that the legally-allotted time within which she was required to commence her legal action had started to expire prior to her personal acceptance her RTS notice at the EEOC

her, Graham-Humphreys executed an acknowledgment of receipt, which stated: "I, Gwendolyn Tabb Graham-Humphreys received my copy of the Notice of Right to Sue dated 3/7/96 for my charge #250952044 today in the Memphis District Office of EEOC." In turn, the subject RTS letter advised, in part:

> This is your NOTICE OF RIGHT TO SUE. It is issued at your request. If you intend to sue the respondent(s) named in your charge, YOU MUST DO SO WITHIN NINETY (90) DAYS OF YOUR RECEIPT OF THIS NOTICE: OTHERWISE YOUR RIGHT TO SUE IS LOST.

(Capitalizations in original).

Between March 28, 1996 and mid-June, 1996, attorney Mathes endeavored, unsuccessfully, to negotiate a resolution of Graham-Humphreys' claim, by means which included a June 4, 1996 settlement proposal letter addressed to Carmean. On June 21, 1996, the plaintiff, purportedly acting *pro se*, inaugurated the instant Title VII action in federal district court. The record disclosed that Timothy Smith, an attorney in Mathes' firm, had drafted the complaint that initiated her federal lawsuit, for which Graham-Humphreys had paid $500. Two lawyers from Mathes' firm continued to advise Graham-Humphreys following the filing of her complaint, for which services she paid an additional $700 fee. On July 3, 1996, via Mathes' office, the plaintiff lodged an amendment to her complaint in which she requested $100,000 in compensatory damages and demanded a jury trial. The plaintiff has acknowledged that she knew that her court case had to be instituted within a legally prescribed period, although she "just relied on [her] attorneys to kind of guide [her] along on that."

___

office, by avowing at deposition that "[s]omehow or another I found out that I needed to get down there [the EEOC headquarters] before the time deadline."

Accordingly, the deposit of a postal attempt-to-deliver advisory at the claimant's last known residential address of record within the five-day mailing interval ordinarily will constitute *constructive receipt* of the RTS notice by the claimant.

Any more lenient rule would illicitly license a Title VII claimant to indefinitely extend limitations by avoiding acceptance of an RTS notice, thereby circumventing the Congressional mandate that private Title VII lawsuits should be initiated within ninety days of the EEOC's "giving" of official authorization to sue. 42 U.S.C. § 2000e-5(f)(1). That precise rationale has undergirded the established rule, illustrated herein, that the mailing and delivery, presumptively accomplished within the five-day period to accommodate delivery, of an RTS announcement to the plaintiff's address of record, *even if erroneous*, actuates the limitations period after expiration of the five day grace period, even if the RTS notice was ultimately returned to the EEOC as undeliverable or unclaimed.

The plaintiff, in rebuttal, has proposed that, even if the passage of ninety-day limitations actuated five days following the Postal Service's March 7, 1996 mailing of her RTS notice, those temporal bounds nevertheless should be extended, as *equitably tolled*, beyond June 10, 1996, to validate her June 21, 1996 court complaint. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), which explained that violation of the Title VII ninety-day filing mandate erected no comprehensive jurisdictional impediment to a civil action but instead merely raised a limitations barrier which "is subject to waiver, estoppel, and equitable tolling." *Id.* at 392-98. A district court's application or rejection of equitable tolling is scrutinized for abuse of discretion. *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998). Generally, an abuse of discretion is evident "when the reviewing court is firmly convinced that a mistake has been made. A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses

191322 (6th Cir. March 17, 1999) (*per curiam*) (unpub'd); *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 384 (9th Cir. 1997).

Even assuming, *arguendo*, that Graham-Humphreys had *not* conceded that she suspected that the certified notice at issue was her EEOC lawsuit authorization, she would nonetheless properly be charged with such knowledge, because she indisputably knew that her RTS notice would be proximately arriving by United States mail. Beyond contravention, most adult Americans are cognizant that critical, time-sensitive official communications are frequently dispatched via certified mail. Fed. R. Evid. 201. In the implicated scenario, the requisites of reasonable diligence demanded that the plaintiff promptly discharge her less-than-demanding obligation to retrieve her certified delivery. *Cf. Hunter*, which observed that a plaintiff's delayed actual receipt of an RTS apprisal caused by a lapse in the discharge of a minimal burden to inform the EEOC of new address would not overcome the presumption of receipt of the RTS letter within five days of mailing. 790 F.2d at 474-75.

Because the plaintiff in this action received imputed notice of her right to sue on March 8, 1996, which was within five days of the March 7, 1996 mailing of the EEOC's advisory notice, her litigation inauguration threshold had been activated on March 13, 1996; it expired ninety days later, on June 10, 1996. Thus, her June 21, 1996 judicial complaint was foreclosed. Generally, when the EEOC posts an RTS notice by United States certified mail to a Title VII claimant, the ninety-day limitations clock begins to tick five days thereafter, if, within that five-day passage, the Postal Service had deposited, at the plaintiff's address of record, a written notification that a mail carrier had unsuccessfully attempted a certified delivery. That rule governs even if that attempt-to-deliver advisory notice did not identify the EEOC as the originator of the letter in question, because a reasonable Title VII claimant should know that the implicated certified document may be the awaited RTS authorization.

Mathes and Graham-Humphreys did not memorialize their attorney-client relationship in writing. At some point after the filing of the July 3, 1996 amended complaint, the Mathes firm stopped performing legal services for Graham-Humphreys. Subsequently, during September or October 1996, the plaintiff consulted Deborah Pagan, another counselor, who determined that service of the summons and amended complaint upon the museum had not yet been accomplished. Pagan furnished Graham-Humphreys with a completed original summons and several photocopies, and directed her to file the summons with the district court clerk's office for processing, and then to provide copies of all documents to a professional process server, Theresa Moses, for service upon a museum representative. At deposition, Graham-Humphreys did not relate Pagan's precise instructions, nor did she recall exactly what actions she (the plaintiff) had taken in the court clerk's office or which paper(s) she subsequently deposited in Moses' courthouse message box; she simply attested that she presented the documents at the courthouse and then "gave [Moses] whatever I was told I was supposed to give her." In any event, the summons which Moses served upon Director Carmean on October 18, 1996 (119 days following the complaint's filing)[3] had not been properly conformed by the court clerk's office.[4]

On November 7, 1996, Brooks, pursuant to Fed. R. Civ. P. 12(b)(4), moved to quash the summons for insufficiency and dismiss the action for failure to serve valid process within 120 days of the complaint's filing. After receiving the defendant's moving papers, the plaintiff telephoned Pagan, who referred her to a specialist in employment law identified simply as

---

[3]Because Graham-Humphreys filed her complaint on June 21, 1996, Fed. R. Civ. P. 4(m) required service upon the defendant or before October 19, 1996. *See also* Fed. R. Civ. P. 6(a).

[4]That summons bore neither the court clerk's signature, the district court's official seal, nor the deadline by which the defendant was required to respond. *See* Fed. R. Civ. P. 4(a) & (b).

"Kathleen."    Graham-Humphreys consulted Kathleen on several occasions.  Subsequently, during a December 30, 1996 status conference, the plaintiff, represented by yet another attorney, Hite McLean, Jr.,[5] moved to amend the summons to correct its fatal defects. Fed. R. Civ. P. 4(a).  On January 13, 1997, the trial court granted the plaintiff's motion to amend the summons and concurrently overruled the defendant's motions to quash the summons and dismiss the case.[6]

Thereafter, on January 30, 1998, the defendant moved, under Fed. R. Civ. P. 56, for summary judgment, charging that the plaintiff had commenced her action more than ninety days following the RTS notification, in violation of limitations. 42 U.S.C. § 2000e-5(f)(1).  On April 29, 1998, the lower court sustained that motion, and dismissed the case with prejudice.[7]  On May 5, 1998, the plaintiff moved, under

---

[5]The plaintiff retained McLean on December 27, 1996, three days prior to the hearing.

[6]On January 17, 1997, Brooks moved for reconsideration of that ruling.  The trial court denied that motion on January 28, 1997.

[7]A court may grant summary judgment under Fed. R. Civ. P. 56 only if, after construing the record evidence, and the reasonable inferences which may be drawn therefrom, most favorably for the party opposing the motion, the proof could not support a judgment in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) (citation omitted). *See also Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456 (1992); *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

All legal conclusions by lower courts are scrutinized *de novo. Grider v. Abramson*, 180 F.3d 739, 746 n.7 (6th Cir.), *cert. denied*, 120 S. Ct. 528 (1999); *Brennan v. Township of Northville*, 78 F.3d 1152, 1154, 1156 (6th Cir. 1996).  Hence, a lower court's summary judgment award is

---

F.2d at 474-75.  *Accord, Johnson v. United States Postal Service*, 64 F.3d 233, 237-38 (6th Cir. 1995); *Johnson-Brown v. Wayne State University*, 173 F.3d 855 (Table), 1999 WL

---

conformity therewith, the EEOC charge form executed on August 24, 1995 by Graham-Humphreys recited that "I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures."  The plaintiff has urged that, because the Regulations compel a Title VII claimant to provide the EEOC with an accurate address, the courts punish failure to do so; whereas no such penalty is warranted against claimants like Graham-Humphreys who have furnished a valid address to the EEOC.

Graham-Humphreys' contention is misconceived.  Because a Title VII plaintiff has a manifest common sense obligation to exercise ordinary diligence in prosecuting his or her claim, even in the absence of an explicit official directive, sister circuits have resolved that a Title VII claimant has constructive notice of his or her right to litigate on the day that the post office has delivered the RTS letter to his or her *correct* address, even though the claimant had not actually received that writing until a later date.  *See Million v. Frank*, 47 F.3d 385, 387-88 (10th Cir. 1995), which concluded that the limitations period began to accrue upon the plaintiff's wife's acceptance of his certified EEOC notification at his residence, even though he had not reviewed that document until six days after its delivery; *Scholar v. Pacific Bell*, 963 F.2d 264, 267-68 (9th Cir. 1992), which ruled that the acceptance of delivery of an RTS notice by the plaintiff's daughter comprised constructive receipt by the plaintiff, even though the plaintiff did not attain actual notice of her right to sue until several days later, noting that the law must preclude "a manipulable open-ended time extension which could render the statutory limitation meaningless" (citation omitted); and *Espinoza v. Missouri Pacific R. Co.*, 754 F.2d 1247, 1248-50 (5th Cir. 1985), which directed that delivery of the RTS notice to the plaintiff's home activated the limitations period even if the plaintiff did not actually receive that notice until some later date because he was out of town).  *Accord, St. Louis v. Alverno College*, 744 F.2d 1314, 1316-17 (7th Cir. 1984); *Law v. Hercules, Inc.*, 713 F.2d 691, 692-93 (11th Cir. 1983) (*per curiam*).  As developed herein, the same rationale supports the deposit of an attempt-to-deliver notice at the complainant's record address within five days of the EEOC's mailing of the RTS letter as an event which triggered the accrual of the ninety-day limitations period on the fifth day after mailing, in conformity with prevailing Sixth Circuit standards.  *Cf. Watts-Means v. Prince George's Family Crisis Center*, 7 F.3d 40, 42 (4th Cir. 1993).

her at the nearby postal station. Graham-Humphreys has conceded that she knew, or suspected, that the certified delivery contained her RTS notice. *See generally Friedman v. Estate of Presser*, 929 F.2d 1151 (6th Cir. 1991), which posited that "[a]ny fact that should excite the plaintiff's suspicion is the same as actual knowledge[.]" *Id*. at 1160 (citations and brackets omitted).

Because Graham-Humphreys "received" imputed notice of her right to litigate during the five-day mailing period (March 8 through March 13, 1996), the ninety-day limitations countdown began on March 13, 1996, the fifth day following the EEOC's March 7, 1996 mailing. The Sixth Circuit has ruled that the EEOC's misdirection of a certified RTS notice caused by the claimant's failure to furnish the EEOC with an accurate address did not stay opening the ninety-day filing window five days following mailing, even though the post office ultimately returned the RTS letter to the EEOC undelivered. *Banks*, 855 F.2d at 326-27. This circuit has remarked that it has not been "inclined toward an inflexible rule requiring actual receipt of notice by a claimant before the time period begins to run," and has resolved that a claimant who neglected to inform the EEOC of his change of address had constructively received his RTS notification because it had been certified by mail to his record address, despite his denial of receipt of that mailing, allegedly because his nine-year-old nephew, who accepted the certified letter at the claimant's record address, misplaced it.[11]    *Hunter*, 790

---

[11]Graham-Humphreys has argued that the absence of an EEOC regulation, and/or language on the EEOC charge forms, which explicitly instructs the complaining party to promptly retrieve any certified envelope which he or she suspects, or reasonably should suspect, might contain an RTS notice, materially distinguished her case from one in which a plaintiff had failed to supply the EEOC with his or her proper address. The EEOC Regulations dictate that "[t]he person claiming to be aggrieved has the responsibility to provide the Commission with notice of any change in address and with notice of any prolonged absence from that current address so that he or she can be located when necessary during the Commission's consideration of the charge." 29 C.F.R. § 1601.7(b). In

---

Fed. R. Civ. P. 59(e) & 60(b), to alter or amend the final judgment. On July 8, 1998, the district judge overruled those motions. The plaintiff noticed a timely appeal from the judgment. The defendant instituted a seasonable cross-appeal, by which it contested (1) the trial forum's January 13, 1997 denial of its motions (A) to quash the defective summons and (B) to dismiss the case for insufficient process, and (2) the initial court's associated allowance of the retroactive curative amendment of the summons.

This reviewing court shall initially consider the district court's summary dismissal of the action as initiated outside limitations.[8] The Civil Rights Act of 1964, Title VII, posits that, if the EEOC has elected not to prosecute a citizen's employment discrimination charge, it shall notify the petitioner of his or her right to initiate a private enforcement lawsuit. " [W]ithin *ninety days after the **giving** of such notice* a civil action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1) (emphases added).

The federal courts have strictly enforced Title VII's ninety-day statutory limit. In *Baldwin County Welcome Center v.*

---

subject to plenary review, because the sufficiency of the record evidence, construed most favorably for the opponent of summary judgment, poses a question of law. *See Doe v. Claiborne County*, 103 F.3d 495, 505 (6th Cir. 1996). The touchstone is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker  v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 251-52).

[8]If the undisputed facts, and/or the record evidence viewed most favorably for the plaintiff, demonstrates as a matter of law that the plaintiff commenced her lawsuit beyond the ambit of limitations, in the absence of a waiver, estoppel, or compelling justification or excuse which tolls limitations (developed further below), a summary dismissal of the complaint should be sustained. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-94 (1982); *Mounts v. Grand Trunk Western R.R.*, 198 F.3d 578, 580 (6th Cir. 2000) .

*Brown*, 466 U.S. 147 (1984) (*per curiam*), an opinion that dismissed a *pro se* Title VII complaint filed outside of limitations, the Supreme Court stated that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Id.* at 152. In *Mohasco Corp. v. Silver*, 447 U.S. 807 (1980), the Court further explained that "experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Id.* at 826. *See also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982).

In the instant case, the EEOC issued, and posted, an RTS notice to Graham-Humphreys on March 7, 1996. The Sixth Circuit has resolved that notice is *given*, and hence the ninety-day limitations term begins running, on the fifth day following the EEOC's mailing of an RTS notification to the claimant's record residential address, by virtue of a presumption of actual delivery and receipt within that five-day duration,[9] unless the plaintiff rebuts that presumption with proof that he or she did not *receive* notification within that period. *Banks v. Rockwell Intern. N. Am. Aircraft Operations*, 855 F.2d 324, 325-27 (6th Cir. 1988); *Cook v. Providence Hospital*, 820 F.2d 176, 179 & n.3 (6th Cir. 1987); *Hunter v. Stephenson Roofing, Inc.*, 790 F.2d 472, 474-75 (6th Cir. 1986). *See* 29 C.F.R. § 1601.28(e) ("The notice of right to sue shall include (1) Authorization to the aggrieved person to bring a civil action under title VII . . . within 90 days from *receipt* of such authorization.") (emphasis added). Accordingly, Graham-Humphreys' litigation initiation window closed on Monday, June 10, 1996 (ninety-five days after the EEOC's March 7, 1996 mailing of

---

[9]The Sixth Circuit allots two days for postal delivery of a RTS notice beyond the three day period allowed by Federal Rule of Civil Procedure 6(e). *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148 & n.1 (1984) (presuming that an RTS notice was received by the plaintiff within three days of posting) (*citing* Fed. R. Civ. P. 6(e)).

the RTS notice to her record residential address), which precluded her June 21, 1996 court action, *unless* she could prove that she did not "receive" the EEOC's March 7, 1996 alert within the five-day mailing period.[10]

As developed above, the plaintiff took personal possession of her RTS notification at the EEOC's area office on March 28, 1996. Accordingly, she has contended that she "received" her RTS authorization on that date; thus her statutory filing period purportedly commenced to expire on March 29, 1996. *See* Fed. R. Civ. P. 6(a). Consequently, because her ninety-day term allegedly did not expire until June 26, 1996, she argues that her complaint filed on June 21, 1996 complaint was within rule.

Nevertheless, even if the plaintiff did not physically attain *actual* "receipt" of her RTS notice until March 28, 1996, she had *constructively* "received" her RTS notification on March 8, 1996, the day that the letter carrier deposited the first of two official notifications at the plaintiff's last known official address which advised that a certified letter awaited

---

[10]Because, as evolved herein, this circuit has previously mandated that, ordinarily, an EEOC notice is "given" five days following its mailing to the claimant's address of record, which rule is founded upon the rebuttable presumption that said notice was "received" by the aggrieved party within that period, EEOC Regulation § 1601.28(e)'s directive that ninety-day limitations is activated upon the claimant's *receipt* of the RTS notice is consistent with 42 U.S.C. § 2000e-5(f)(1)'s pronouncement that the ninety-day clock begins ticking upon the EEOC's *giving* of such notice. In most circumstances, the nuance between the EEOC's "giving," and the complainant's "receiving," an RTS authorization will be immaterial, because most notices will be "given" and "received" simultaneously, or at least within the legally recognized extension of time to accommodate mailing. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973), wherein the Supreme Court remarked that a Title VII civil action predicate is satisfied upon the plaintiff "*receiving* and [timely] acting upon the Commission's statutory notice of the right to sue;" the Court apparently presumed that the "receipt" of notice would ordinarily coincide with, or proximately follow, the "giving" of notice. (Emphasis added).