Jose Oscar CHAVEZ, Ana Patricia Chavez, Haydee Duran, Cecilia Santos, Jose Francisco Calderon Jane Doe I, Jane Doe II, and John Doe, Plaintiffs,

v.

Nicolas CARRANZA, Defendant.

No. 03–2932.

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 30, 2004.

---

Carolyn Patty Blum, New York, NY, David R. Esquivel, Bass Berry & Sims PLC, Nashville, TN, Matthew J. Eisenbrandt, San Francisco, CA, for Plaintiff.

Nicolas Carranza, Robert M. Fargarson, Neely Green Fargarson Brooke & Summers, Memphis, TN, for Defendant.

## ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS THE COMPLAINT

MCCALLA, District Judge.

Before the Court are two motions: (1) Defendant's Motion to Dismiss the Complaint. filed January 20, 2004, and (2) Defendant's Renewed Motion to Dismiss, filed March 9, 2004. Plaintiff responded in opposition on April 8, 2004. For the reasons stated below, Defendant's motions are DENIED.

## I. Background

According to the Amended Complaint, El Salvador experienced intense political unrest in the late 1970s. Various militant organizations, including the Salvadoran Security Forces, carried out systematic repression and human rights abuses against political dissenters during this time. This led to a civil war that lasted from January, 1981 until January, 1992. On January 16, 1992, a United Nations-sponsored Peace Accord was signed by the Salvadoran government and guerilla forces. In March of 1993, the Salvadoran legislature adopted an amnesty law precluding criminal or civil liability for anyone who committed a political or common crime before January 1, 1992. The first elections following the signing of the Peace Accord were held in March of 1994.

Plaintiffs, who are or were at all pertinent times citizens of El Salvador, filed this action pursuant to the Torture Victims Protection Act ("TVPA"), Pub.L. No. 102–256, 106 Stat. 73 (enacted March 12, 1992) (codified as Note to 28 U.S.C. § 1350), and the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350, on December 10, 2003. Plaintiffs allege that Defendant is liable for the extrajudicial killing and/or torture of themselves or members of their immediate families that was committed by the Salvadoran Security Forces or the Salvadoran Treasury Police in the early 1980s.

Defendant, Nicolas Carranza, served as El Salvador's Vice–Minister of Defense and Public Security from about October, 1979 until January, 1981, during which time he exercised control over the three units of the Salvadoran Security Forces.

He served as Director of the Treasury Police from about June, 1983 until May, 1984, during which time he exercised control over the Treasury Police. Plaintiffs Amended Complaint alleges that Mr. Carranza "exercised command responsibility over, conspired with, or aided and abetted subordinates in the Security Forces of El Salvador, or persons or groups acting in coordination with the Security Forces or under their control, to commit acts of extrajudicial killing, torture, crimes against humanity, and cruel, inhuman or degrading treatment or punishment, and to cover up these abuses." (Am.Compl.¶ 2.) Defendant has resided in the United States since 1984, and is currently a resident of Memphis, Tennessee.

Defendant filed a Motion to Dismiss on January 20, 2004, arguing that the claims in the Complaint are barred by the statute of limitations and that this Court lacks subject matter jurisdiction. On February 23, 2004, Plaintiffs filed an Amended Complaint. Defendant then filed a Renewed Motion to Dismiss on March 9, 2004, setting forth similar arguments to those made in the original Motion to Dismiss.

## II. Standard of Review

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a 12(b)(6) motion, a court must treat all of the well-pleaded allegations of the complaint as true, *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir.1992). Furthermore, the court must construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "A court may dismiss a [claim under 12(b)(6) ] only if it is clear that no relief could be granted under any set of facts that could be proved con-

sistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■ Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for lack of subject matter jurisdiction. The plaintiff has the burden of proving that the court has subject matter jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990). To do so, the plaintiff must demonstrate that the complaint alleges a substantial federal claim. *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir.1996). Courts construe the allegations of a complaint in the light most favorable to the plaintiff when ruling on a 12(b)(1) motion. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 408 (6th Cir.1997). If a court determines that it lacks subject matter jurisdiction, "the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

## III. Analysis

### A. Statute of Limitations

Defendant argues that Plaintiffs' claims are barred by the applicable ten-year statute of limitations because the complained of acts took place in the early 1980s, twenty years prior to the commencement of this action. The Torture Victims Protection Act of 1991 provides that "[n]o action shall be maintained under this section unless it is commenced within ten (10) years after the cause of action arose." 28 U.S.C. § 1350 (note). Though the TVPA limitations period does not explicitly apply to the ATCA, courts have applied the TVPA limitations period to the ATCA. *See, e.g., Papa v. United States*, 281 F.3d 1004, 1011–12 (9th Cir.2002). Plaintiffs filed their Complaint on December 10, 2003. Therefore, any act occurring prior to December 10, 1993 would be barred by the ten-year stat-

ute of limitations applicable to ATCA and TVPA claims.

■ Each of the acts alleged in the Complaint occurred prior to December 10, 1993. However, Plaintiffs argue that the statute of limitations is subject to equitable tolling in this case. Courts that have addressed the applicability of the ten-year limitations period to TVPA and ATCA actions have held that the doctrine of equitable tolling should apply "where extraordinary circumstances outside plaintiff's control make it impossible for plaintiff to timely assert his claim." *Forti v. Suarez–Mason,* 672 F.Supp. 1531, 1549 (N.D.Cal. 1987). *See also Hilao v. Estate of Marcos,* 103 F.3d 767, 773 (9th Cir.1996).[1] Additionally, the Senate Report on the TVPA states that the ten-year limitations period is subject to equitable tolling. S.Rep. No. 102–249, at 11, U.S.Code Cong. & Admin.News, p. 84 (1991).

Plaintiffs assert that the facts alleged in the Complaint are sufficient to toll the ten-year limitations period because they constitute extraordinary circumstances that made it impossible for Plaintiffs to timely file their claims. In particular, the Complaint alleges that the Salvadoran Security Forces engaged in human rights abuses against the citizens of El Salvador beginning in the late 1970s. During this time, the Salvadoran Security Forces worked hand-in-hand with paramilitary groups known as death squads. The death squads and the Salvadoran Security Forces were responsible for the use of torture, forced disappearances, arbitrary detention, and extrajudicial killing of Salvadoran citizens. (Am.Compl.¶ 17.) These groups allegedly operated with the approval and permission of Mr. Carranza. (*Id.*)

Due to the repression carried out by the Security Forces and death squads, El Salvador was in a state of civil war during the 1980s and early 1990s. An estimated 75,-000 Salvadoran civilians were killed during the course of the war. (*Id.* ¶ 18.) The Amended Complaint also alleges that during this time, a Catholic Archbishop was murdered while saying mass by persons suspected to be government agents, one of the alleged authors of the crime openly campaigned for the Presidency, the judge investigating the murder was threatened and forced to leave the country, death squads were controlled by the President, and many opposition political leaders were murdered · by the Security Forces and death squads. (*Id.* ¶ 75.) The Salvadoran judicial system allegedly failed to investigate serious crime and not a single Salvadoran officer was ever tried and convicted for human rights abuses in El Salvador. (*Id.* ¶ 76.)

Among the political leaders allegedly murdered was Decadent James Doe, husband of Plaintiff Jane Doe II. According to the Amended Complaint, James Doe was assassinated by the Security Forces because of his role in the leadership of the Frente Democratico Revolucionario (Dem-

---

1. The Sixth Circuit has identified five-factors to consider when determining whether to apply equitable tolling, "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 561 (6th Cir.2000). This test, however, has been applied mainly in Title VII employment discrimination cases. In any event, this five factor test is not comprehensive and "[t]he propriety of equitable tolling must necessarily be determined on a case-by-case basis." *Id.* at 561 (quoting *Truitt v. County of Wayne,* 148 F.3d 644, 648 (6th Cir.1998)). The Sixth Circuit has not addressed the applicability of its five-factor equitable tolling test in TVPA or ATCA actions.

ocratic Revolutionary Front—hereinafter, "FDR"). (*Id.* ¶ 19.) The FDR constituted the only political opposition to the ruling government. (*Id.* ¶ 21.) On November 27, 1980, James Doe was abducted by the Security forces, along with six other FDR leaders, from a school where they were meeting. The men were tortured and then murdered. (*Id.* ¶¶ 22–23; 49–51.) After their bodies were found, the criminal court failed to conduct a proper investigation and closed the case in October, 1982. (*Id.* ¶ 53.)

█ Since 1979, all Plaintiffs have either been living in El Salvador or have immediate family living in El Salvador. (Pls.' Mem. in Opp'n to Def.'s Renewed Mot. to Dismiss at 10.) Plaintiffs claims concern the murder, rape, and torture of themselves or their relatives by the Security Forces or the Treasury Police during the Salvadoran civil war. Plaintiffs claim they reasonably feared reprisal against themselves or their family members in El Salvador if they complained about the murder, torture, and rape that occurred during this civil war. As the facts detailed above and asserted more fully in the Amended Complaint show, this is an "extraordinary circumstance[ ] outside plaintiff[s'] control [which made] it impossible for plaintiff[s] to timely assert [their] claim[s]." *Forti,* 672 F.Supp. at 1549. Thus, equitable tolling should apply.

The next question before the Court is when the statute of limitations should have commenced running. The civil war officially ended with a Peace Accord in January of 1992. However, Plaintiffs argue that the ten-year limitations period should be equitably tolled until March of 1997, when the first relatively peaceful national elections were held after the Salvadoran civil war. Alternatively, Plaintiffs allege that the statute of limitations should be tolled until the first post-war national elections in March of 1994.

The Amended Complaint alleges that the violence synonymous with the Salvadoran civil war continued after the signing of the Peace Accord. Although the Peace Accord provided that the Security Forces would be disbanded, several hundred members of the Treasury Police and National Guard were absorbed into the newly created National Civilian Police. (Am. Compl.¶ 77.) Death squads linked to the disbanded Security Forces continued to perpetrate violent acts against Salvadoran citizens after the signing of the Peace Accord and before the election of 1994. This violence included the murders of three opposition political leaders, the murders of opposition political activists, and the commission of ninety-four acts of politically motivated abuses of human rights. (*Id.* ¶ 79.) The Amended Complaint also asserts that violence continued after the election of 1994, with evidence that the Black Shadow death squad committed at least three dozen murders and threatened to execute six judges in early 1995. (*Id.* at 81.) Plaintiffs assert that the politically motivated violence did not end until the March, 1997 elections, which were peaceful and contained little evidence of fraud. Opposition political leaders won significant posts in the 1997 election and were permitted to safely occupy those posts without fear of reprisals. (*Id.* ¶ 82.)

The Court finds that the statute of limitations should be tolled until at least March of 1994, when the first national elections occurred after the end of the civil war. It is not necessary for the Court to determine whether the continued violence following the signing of the Peace Accord tolls the limitations period until March of 1994 or March of 1997, when the first relatively peaceful national elections occurred, because Plaintiffs' claims are time-

ly under either circumstance. Thus, the ten-year statute of limitations applicable to the TVPA and the ATCA does not bar Plaintiffs' claims. The Court DENIES the Motion to Dismiss based on the statute of limitations.

### B. Exhaustion of Remedies

 Next, Defendant argues that Plaintiffs' claims should be dismissed because Plaintiffs failed to exhaust their remedies under El Salvador law before filing this action. The TVPA states that "[a] court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred." 28 U.S.C. § 1350 (note). Nonexhaustion of remedies is an affirmative defense, however, and "[t]he ultimate burden of proof and persuasion on the issue of exhaustion of remedies . . . lies with the defendant." S.Rep. No. 102–249, at 9–10 (1991).

 Though Plaintiffs' Complaint implies that Plaintiffs have not pursued any remedies in El Salvador, Plaintiffs assert that they have no adequate or available remedies in El Salvador. The Salvadoran legislature passed an amnesty law in March of 1993 precluding Plaintiffs from seeking relief in El Salvador courts for any political or common crime committed before January 1, 1992. (Am. Compl. at 25.) Defendant has offered nothing to show that remedies are available to Plaintiffs in El Salvador. Therefore, Plaintiffs' failure to pursue remedies in El Salvador does not bar Plaintiffs' TVPA claims against Defendant. The Court DENIES Defendant's Motion to Dismiss for failure to exhaust remedies under El Salvador law.

### C. Subject Matter Jurisdiction

 Finally, Defendant argues that this Court lacks jurisdiction over the ATCA claims of Plaintiffs who are citizens of the United States, namely, Jose Oscar Chavez, Haydee Duran, Cecilia Santos, and Jose Francisco Calderon. The ATCA creates jurisdiction in United States courts only for non-citizen plaintiffs who sue a defendant in tort for a violation of international law. 28 U.S.C. § 1350. "[W]hile the [ATCA] provides a remedy to aliens only, the TVPA . . . extends a civil remedy also to U.S. citizens who may have been tortured abroad." S.Rep. No. 102–249, at 5 (1991). In their response, Plaintiffs clarified that while the non-citizen Plaintiffs have brought their claims under both the ATCA and the TVPA, the citizen Plaintiffs assert claims only under the TVPA. Subject matter jurisdiction over the citizen Plaintiffs' TVPA claims is proper in this Court. Because the citizen Plaintiffs do not assert ATCA claims, that aspect of Defendant's motion is DENIED as moot.

### IV. Conclusion

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss and DENIES Defendant's Renewed Motion to Dismiss.