**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0591n.06
Filed: October 1, 2008

**Case No. 07-6098**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LARRY KELLUM, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE WESTERN** |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **DISTRICT OF TENNESSEE** |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| ——————————————— | ) | |
| | ) | |
| | ) | |

**BEFORE: BATCHELDER, SUTTON, and FRIEDMAN\*, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Plaintiff–Appellant, Larry Kellum appeals

the district court's dismissal of his complaint as untimely. Because Kellum's complaint was

untimely, and because he has not demonstrated exceptional circumstances warranting equitable

tolling, we affirm.

**I. BACKGROUND**

On May 3, 2001, Kellum filed an application for disability benefits under Title II of the

Social Security Act, 42 U.S.C. § 401 *et seq*. On February 22, 2005, his application was denied by

an administrative law judge ("ALJ"). On May 27, 2005, the Appeals Council of the Social Security

---

\*The Honorable Daniel M. Friedman, Circuit Judge for the United States Court of Appeals for the Federal Circuit., sitting by designation.

Administration denied Kellum's request for a review of the ALJ's decision. At this point, Kellum should have been notified that he had sixty days from his receipt of the denial to challenge that determination by filing a civil action in federal district court. For whatever reason, Kellum was not so notified. On November 1, 2006, however, the Appeals Council sent Kellum a letter informing him of the mistake. That letter advised him that his deadline for filing an action in district court would now be thirty days after he received the letter, and that unless Kellum demonstrated otherwise, he would be presumed to have received the letter on November 6, 2006. Thus, Kellum had until December 6, 2006, to file for review in district court.

On December 6, 2006, Kellum submitted a complaint to the Office of the Clerk of Court of the Western District of Tennessee using the court's electronic filing system ("ECF"). Upon receipt of the complaint, the Clerk's Office sent Kellum an automated email notice of filing of the complaint. On the following day, December 7, the Clerk's Office notified Kellum that the required filing fees had not been paid and that a valid credit card number was needed. Kellum did not supply valid credit card information until December 11, 2006; as a result, Kellum's complaint was date-stamped December 11, 2006.

The Commissioner filed a motion to dismiss Kellum's complaint as untimely because it was filed five days after the December 6 filing deadline. The district court granted the motion to dismiss, finding that the Clerk's Office had the authority to delay the complaint's filing date until fees were paid on December 11, and that Kellum was not entitled to equitable tolling.

## II. ANALYSIS

We conduct a de novo review of a district court's determination that a complaint was filed outside the applicable statute of limitations. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th

2

Cir. 2007). "Where the facts are undisputed, we also review de novo a decision on the application of equitable tolling; otherwise, we apply the abuse-of-discretion standard." *Id*. (citing *Dunlap v. United States*, 250 F.3d 1001, 1007 n.2 (6th Cir. 2001)).

**A. Kellum's Complaint was Untimely.**

It is clear that Kellum's complaint was untimely:  the filing deadline was December 6, 2006, and the complaint was not date-stamped until the filing fees were paid on December 11, 2006.  The only question is whether Kellum's failure to pay the filing fees justified date stamping his complaint on December 11, as opposed to December 6, which is when Kellum submitted the complaint on ECF.  Answering this question, ECF Rule 2.3.A provides:

> E-Filers who file new cases electronically must provide the Clerk of Courts with a credit card authorization for payment of filing fees.  This authorization can be given case-by-case or through means of a standing credit card authorization, which is the preferred and recommended manner for E-Filers planning to frequently file new cases in the Western District.  Credit card authorization forms can be found on the District Court's Web site. *Please note that it is the responsibility of the E-Filer to keep credit card information current, and it must be emphasized that the failure to pay any filing fee may delay or prevent the E-Filer from filing the document for which a filing fee is due.*

(Emphasis added.)  Thus, as the district court correctly concluded, it was clearly proper to delay date stamping Kellum's complaint until December 11 when he paid the required filing fees.

Kellum provides no basis for concluding otherwise.  He attempts to argue that Rule 2.3.A is superseded by the Federal Rules of Civil Procedure, but none of the Federal Rules cited by Kellum actually conflicts in any way with Rule 2.3.A.  Accordingly, Kellum's complaint was untimely.

**B. Kellum is Not Entitled to Equitable Tolling.**

Because Kellum's complaint was untimely, he can avoid dismissal only if he establishes exceptional circumstances warranting equitable tolling, a point on which Kellum bears the burden.

3

*See Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002) (party seeking equitable tolling bears the burden of establishing his entitlement; in the habeas context but collecting cases in other contexts); *see also Jackson v. Astrue*, 506 F.3d 1349, 1353 (11th Cir. 2007) ("in the context of § 405(g), the '[p]laintiff bears the burden of establishing the exceptional circumstances that warrant equitable tolling.'" (quoting *Davila v. Barnhart*, 225 F. Supp. 2d 337, 339 (S.D.N.Y. 2002))); *Cardyn v. Comm'r of Soc. Sec.*, 66 Fed. Appx. 394, 397 (3d Cir. 2003) (In the context of tolling § 405(g), "[i]t is the plaintiff who bears the "burden of establishing the equitable tolling exception."). This is a high hurdle to clear, as "federal courts sparingly bestow equitable tolling." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000). When determining whether equitable tolling should apply we consider the following factors: "(1) the petitioner's lack of [actual] notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Cook*, 480 F.3d at 437.

On this issue, Kellum advances essentially two arguments: (1) that he acted diligently in pursuing his rights, and (2) that the Government was not prejudiced by the late filing. For the reasons described below, Kellum's first argument is incorrect, while his second is immaterial because Kellum has failed to identify any other factor that supports his entitlement to equitable tolling, *see Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) ("Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures.").

4

First, Kellum has not shown why we should even consider equitable tolling in this case. Equitable tolling generally "applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys*, 209 F.3d at 560-561; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing . . . that some extraordinary circumstance stood in his way."). Kellum has not argued that his late filing was caused by any extraordinary circumstance beyond his control. In fact, it is quite clear that Kellum's late filing was caused by two events, each of which was well within his control: (1) his decision to wait until the last possible day to file his complaint, and (2) his failure to provide accurate credit card information for fee purposes. We recognize that both of these are actions of Kellum's counsel, but that fact is immaterial here. To begin with, the actions of a privately retained attorney are imputed to the client. *See Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 396-97 (1993) (recognizing that in various contexts "clients must be held accountable for the acts and omissions of their attorney"); *United States v. Boyle*, 469 U.S. 241 (1985) (holding that a client could be penalized for counsel's tardy filing of a tax return); *Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962) (holding that "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client"); *Mason v. DOJ*, 39 F. App'x 205, 207-208 (6th Cir. 2002) ("for purposes of determining whether equitable tolling applies, the actions of plaintiffs' attorneys are attributable to their clients" (citing *Jarrett v. Kassel*, 972 F.2d 1415, 1426 (6th Cir. 1992))). Furthermore, Kellum's counsel explained at oral argument that, at least with regard to the first of the two, Kellum himself bears direct responsibility, having waited until December 6, 2006, even to bring to his counsel the notice from the Appeals Council

5

advising of the deadline for filing an action in district court. Thus, Kellum's failure to file on time was not the result of any extraordinary occurrence beyond his control that would make equitable tolling appropriate, and this case will serve as yet another "classic reminder of the risks that applicants take for no apparent reason by waiting until the very end of a filing period to initiate their lawsuits." *Cook*, 480 F.3d at 437.

In this case, the only event that arguably could warrant use of equitable tolling was the email notification of electronic filing sent to Kellum after his complaint was electronically submitted on December 6, 2006. The notification is at the very least misleading, stating as it does that Kellum's complaint was electronically "filed on 12/6/2006." We can conceive of a case in which a plaintiff might mistakenly rely on this notice and, believing that his complaint had already been "filed" for statute of limitations purposes, fail promptly to correct a filing problem. But this is not such a case. Kellum does not argue that the failure to provide valid credit card information had anything to do with this email notification. Furthermore, even if we were willing to make the argument for him — which we are not — it would be implausible on these facts. Kellum did not submit his complaint until 3:13 PM on December 6, the last day on which he could timely file it. In the absence of any notification — misleading or otherwise — Kellum clearly would not have provided valid billing information in time to make his complaint timely. Moreover, it took Kellum four days to correct the error once it was brought to his attention, and he has given us no reason to think that he would have taken adequate corrective action even if an email notification had informed him of the error immediately after submission of his complaint. Thus, the only conceivable "extraordinary circumstance" beyond Kellum's control clearly had nothing to do with the tardy filing of his complaint.

Second, Kellum makes no persuasive arguments as to how he acted diligently in pursuing his rights. He continually makes the following unclear, misleading, and apparently false argument: After being notified of the deficiency on December 7, "[i]mmediate corrective action of reporting further credit card information to the District Court Clerk's Office was taken that day, resolving this matter." In fact, Kellum did not supply a valid credit card number until December 11, 2006, some four days after he was notified of the problem; there is no indication Kellum took *any* action "that day." Furthermore, even if we concede that it was unlikely Kellum could have corrected the error on the two days during this period that fell on the weekend — an argument Kellum never makes — there was nothing "immediate" about his actions. Kellum's lack of candor on this point makes it hard for us to conclude that he acted diligently in pursuing his right to file this action challenging the denial of benefits.

We note in passing that, at oral argument, ECF Rule 12.3 was brought to our attention for the first time. The rule provides that, when E-filers are notified of a defect in their submitted complaint, they have "twenty-four (24) hours from the date and time of the original filing to file a corrected document in order to preserve the date and time stamp of the original, deficient filing." Whether that rule should be read literally — to provide only 24 hours from the date of the original filing — or expansively — to provide 24 hours from receipt of notice of defect in electronic submission — for correction of that defect may be a subject for argument. But neither that argument nor the rule itself is material to the issue before us here. First, Rule 12.3 deals only with correcting defective filings by "fil[ing] a corrected document." Kellum's deficiency, however, was not in the complaint he filed, but in his failure to timely pay the filing fee. Second, the rule has nothing to do with equitable tolling, because it deals only with preserving the original filing date. This cannot help

7

Kellum, however, because his complaint was untimely under any reading of Rule 12.3.

Kellum cannot prevail whether we review his claim of error for abuse-of-discretion or de novo, and we therefore need not decide which standard of review is appropriate for this case. Kellum's waiting until the final day to file his complaint and failing to provide promptly the required credit card information is not the type of unavoidable circumstance that justifies equitable tolling. Furthermore, even if we were to view the initial credit card mistake as an extraordinary circumstance beyond his control, Kellum has not demonstrated that he acted with due diligence to correct that mistake. Accordingly, it is clear that Kellum has not satisfied the high burden of establishing entitlement to equitable tolling.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

SUTTON, J., dissenting. While I have some sympathy for the majority's view that Kellum has only himself—and his counsel—to blame for this predicament, I cannot join its opinion based on one analogy and one line of precedent.

*Analogy.* In accordance with the local rules of the United States District Court for the Western District of Tennessee, Larry Kellum submitted his complaint in the only way that the court permits complaints or for that matter any other legal document to be filed—by electronic filing. W.D. Tenn. ECF Pol'y & Proc. 2.1. Kellum submitted the complaint on the afternoon of Wednesday, December 6, which (all agree) was the last day of the statute-of-limitations period. That same day, Kellum received an electronic message from the district court informing him that his complaint had been "filed on 12/6/2006." JA 41. Kellum received no other communication from the court that day.

Not until the next day, a Thursday, did Kellum receive a notice indicating that there was a problem with the filing of his complaint. At 2:55 pm, the district court sent him an e-mail indicating that the requisite "credit card authorization form had not been submitted." JA 76. So far as the record shows, the e-mail did not say that the complaint had not been timely filed; it did not say that he had a certain amount of time to correct the problem or explain the consequences of failing promptly to correct the problem; and it did not explain the problem—namely, that he had not given the court his security code for the credit card. According to Kellum's counsel, he tried to contact the court to determine what the problem was. But the record is silent as to when he made this contact, and it is silent as to what the clerk's office said in response. One way or another, Kellum eventually learned that, while he had placed on file his credit-card information with the court, as required by local electronic-filing rules, *see* W.D. Tenn. ECF Pol'y & Proc. 2.3.A, he had not included his credit-

9

card security code. Kellum's attorney submitted the requisite credit-card security code on the morning of December 11, a Monday. After the attorney submitted this information, the district court sent Kellum a new notice of electronic filing, changing the filing date from December 6 to December 11—placing the complaint outside of the limitations period.

While it is no doubt true that attorneys who wait until the last day of a statute-of-limitations period to file a complaint have only themselves to blame when Murphy's Law comes knocking, that truth does not resolve this case. What ought to resolve this case is a comparison between what would have happened to Kellum if his attorney had done every one of these things but had filed a paper copy of his complaint by hand instead of filing it electronically. Had he filed a paper copy of the complaint on the last day of the limitations period and had the clerk stamped an extra copy of the complaint with the words "filed on 12/6/2006," no court, I submit, would have tossed the complaint on statute-of-limitations grounds—even if, one day later, the court's clerk identified a defect in the filing, whether that defect was caused by a check that later bounced, a credit card that declined payment, a failure to sign the complaint or some other failure to comply with the court's rules regarding the form and content of a complaint. The majority cites no decision that says otherwise, and I have found none.

What normally happens in these circumstances is something different. The clerk's office, sure enough, may insist that a party comply with its local rules. The clerk just cannot do so retroactively. As a matter of equity, courts occasionally allow nunc pro tunc filings, leniently treating later acts as having been done earlier. Yet I am aware of no tradition, much less a single precedent, for the concept that a court can do the reverse—treat a timely filed pleading as late based on events *after* the limitations period has run and *after* the document was timely filed. The statute

10

of limitations has nothing to say about a pleading defect like this one once a court's clerk's office chooses to accept and stamp—whether by hand or through an electronic communication—the pleading as having been "filed." Instead, the clerk's office may give the party a reasonable amount of time to correct the defect. If the party makes the correction, all is well. If not, then the court may wish to bounce the complaint—not for failing to satisfy the limitations period but for failing to satisfy the clerk's legitimate request to correct a defect in the filing. That is all there is to this case. I see no cognizable reason for treating this kind of problem any differently from how it would have been treated under the now-quaint, paper-pleading system.

Nor do the terms of the local rule require a different conclusion. The rule states that "it is the responsibility of the E-Filer to keep credit card information current, and it must be emphasized that the failure to pay any filing fee may delay or prevent the E-Filer from filing the document for which a filing fee is due." W.D. Tenn. ECF Pol'y & Proc. 2.3.A. No doubt this rule permits the clerk's office to refuse to accept a complaint if the credit-card information was not current. But that is not what this clerk's office did. It accepted the filing, then identified the credit-card problem the next day, after the limitations period had run. Because the rule says that the clerk "may" *decline* to accept the filing, that also means it "may" *accept* the filing and ask the party to correct the defect later. In this case, the clerk's office followed the latter course, which the rule permits and which made Kellum's complaint timely.

If a clerk's office, by contrast, wishes to prevent complaints from satisfying a limitations deadline until a filing fee has been paid, it may do so. All it would need to do is swipe the credit card *before* accepting the complaint and *before* communicating to the party that it has been "filed" on that day. This clerk's office chose not to take that approach. How strange, then, that Kellum gets

11

punished for failing to follow the letter of a local rule about having current credit card information on file while the same clerk's office must not follow the letter of its notice of a timely "filed" electronic submission. "It is very well to say that those who deal with the Government should turn square corners. But there is no reason why the square corners should constitute a one-way street." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 387–88 (1947) (Jackson, J., dissenting), *quoted in United States v. Winstar Corp.*, 518 U.S. 839, 886 n.31 (1996).

*Precedent.* But even if we choose not to treat the December 6 filing as timely filed, this case comes well within our precedents on equitable tolling or at a minimum warrants further consideration by the district court on this point. According to *Cook v. Commissioner of Social Security*, 480 F.3d 432 (6th Cir. 2007), we consider five factors in determining whether a statute of limitations should be equitably tolled: "(1) the petitioner's lack of [actual] notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Id*. at 437.

The gist of the district court's application of these factors was (1) that Kellum had every reason to know about the local-rule requirement that he keep current credit-card information on file with the court and (2) that he filed his complaint on the last day of the limitations period, leaving him little time to correct any deficiency. But that does not represent an application of all of the *Cook* factors but at most an application of the first two. It is by no means clear that the remaining three factors favor dismissing the complaint. It remains unclear what the clerk's office told Kellum on the afternoon of December 7 and how long it gave him to correct the problem. And the notice from the clerk's office not only said that the court had "received" the complaint "from [the plaintiff's

12

attorney]," but it also said that the court had "entered" the complaint "on 12/6/2006 at 3:13 PM CST and *filed* [it] on 12/6/2006." JA 41 (emphasis added). Based on what we know so far, it is certainly plausible, if not likely, that an application of *all* of the *Cook* factors would favor equitable tolling here. *Cf. Andrews v. Orr*, 851 F.2d 146, 151–52 (6th Cir. 1988); *see also* W.D. Tenn. ECF Pol'y & Proc. 6.2 (providing that "[a]n electronically submitted document is deemed filed on the date and at the time stated on the system-generated [notice of electronic filing]").

It is true that *Cook* explains the risks of waiting until the last day to file a complaint. *Cook*, 480 F.3d at 437. But Kellum failed to meet the deadline not because he miscalculated the length of the filing period, the fatal flaw in *Cook, see id*. at 436–37, but because there was a later-identified deficiency in his timely submission. Had we tolled the limitations period in *Cook*, we would have been obliged to toll the limitations period for every *almost timely* complaint—a result that, I agree, would undermine any "clear filing deadline" and "create havoc in the system." *Id*. at 437. No string of equivalent risks exists here: Kellum filed the complaint *within* the limitations period; the district court accepted the filing; and it notified Kellum that the complaint had been "filed" on that day. Permitting the filing of such complaints at worst will allow a modest number of defective complaints to be filed. And if that approach does not satisfy the clerk's office, it can correct the problem by not accepting any complaints until all requirements have been met.

This case, in truth, is the opposite of *Cook*. The problem in *Cook* was that acceptance of the claimant's argument effectively would have *lengthened* the limitations period by at least a day. But today's decision effectively *shortens* the limitations period by one day (and maybe more days) by forcing claimants to file complaints early to give the clerk's office time to identify defects in complaints it has already accepted and by giving the party time to correct those defects. That is no

13

way to run a clerk's office, and it is no way to enforce a statute of limitations.

The majority seeing these issues differently, I respectfully dissent.