NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0311n.06

Case No. 20-6407

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED
Jul 02, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| D.B., a minor, by and through his next of friend and mother, ANTOINETTE LUNDY, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) ) ) | |
| SHELBY COUNTY HEALTH CARE CORPORATION; UNITED STATES OF AMERICA, | ) ) ) | OPINION |
| Defendants-Appellants. | ) ) | |

BEFORE: GILMAN, McKEAGUE, and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. In August 2017, Antoinette Lundy filed a lawsuit on behalf of her infant child, D.B., asserting medical tort claims against several defendants. Unfortunately for Lundy and D.B., the applicable statute of limitations had expired the year before. The district court granted summary judgment in favor of the defendants on that basis, finding no reason to toll the limitations period. We affirm.

I.

On May 2, 2014, Antoinette Lundy gave birth to D.B. at the Regional One Medical Center in Memphis, Tennessee. During labor, D.B.'s oxygen and blood flow were restricted and, as a result, he sustained serious brain damage. Believing that the doctors were responsible for her son's

injuries, Lundy sought advice from a law firm in December 2014.[1] After reviewing the facts and law, the firm advised Lundy that she had no case because it was too early to determine the extent of D.B.'s injuries. The firm closed its file on D.B.'s case in April 2015. In September 2016, Lundy retained new counsel.

Seven months later, on April 28, 2017, Lundy's new counsel sent letters to entities and individuals she planned to sue for D.B.'s injuries, including the Medical Center,[2] Lundy's prenatal care facility Christ Community Health Services, and one of CCHS's employees, Dr. William G. Mullinax, who helped deliver D.B.

Shortly thereafter, the United States Department of Health and Human Services sent Lundy's new counsel a letter noting that CCHS and its covered employees were deemed employees of the federal government for purposes of tort coverage under the Federal Torts Claims Act. The letter also notified counsel that the exclusive remedy against CCHS and its employees was an action pursuant to the FTCA, and that all administrative remedies would need to be exhausted before such an action could be filed.

Undeterred, Lundy filed suit in state court on August 22, 2017, alleging state causes of action for negligence. She also filed an administrative complaint on October 13, 2017. On November 3, 2017, CCHS removed the state case to federal district court. And on December 6, 2017, the United States moved to substitute itself as a defendant in place of CCHS and Dr. Mullinax. The district court granted the motion. It also granted the Government's later-filed motion to dismiss because Lundy had not exhausted her administrative remedies.

---

[1] Although D.B. is the named party, for clarity, and because this appeal is brought by and through D.B.'s mother, Lundy, we refer to Plaintiff-Appellant as Lundy throughout.

[2] The Medical Center is formally named the Shelby County Health Care Corporation.

Five months later, Lundy filed an amended complaint substituting the United States as a defendant in place of CCHS and Dr. Mullinax. The Government quickly moved for summary judgment, arguing that Lundy's tort claim was barred by the FTCA's two-year statute of limitations. The district court agreed and found that there was no reason to toll the limitations period. Lundy appeals.

## II.

We review a district court's grant of summary judgment de novo. *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019). Summary judgment is appropriate when there is "no genuine dispute as to any material fact," and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he evidence is construed and all reasonable inferences are drawn in favor of the nonmoving party." *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (citing *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008)).

## III.

There is no dispute that Lundy filed this action after the FTCA's applicable two-year statute of limitations period. So the only issue on appeal is whether the district court erred in choosing not to toll that limitations period.

Equitable tolling allows a court to extend a statute of limitations period when a litigant's failure to file suit within that period was unavoidable. *Jackson v. United States*, 751 F.3d 712, 718 (6th Cir. 2014). In cases where the government is involved, we apply the doctrine "sparingly, . . . not when there has only been a garden variety claim of excusable neglect." *Id.* (quoting *Chomic v. United States*, 377 F.3d 607, 615 (6th Cir. 2004)). The party asserting its application carries the burden of establishing its relevance in any given case. *Id.* at 718–19. And for purposes of determining whether equitable tolling applies, the action or inaction of an attorney is attributable

to his or her client. *Mason v. Dep't of Just.*, 39 F. App'x 205, 207 (6th Cir. 2002). Finally, because the facts are undisputed, we review the district court's equitable-tolling decision de novo, rather than simply for an abuse of discretion. *See Zappone v. United States*, 870 F.3d 551, 555 (6th Cir. 2017).

Normally, we consider five factors when evaluating whether equitable tolling is appropriate. *See Jackson*, 751 F.3d at 719. Those factors include "(1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Id.* Though we have lately recognized a few "limitations" to that elemental approach, we nonetheless continue to apply it in FTCA suits. *See Zappone*, 870 F.3d at 556–57. The parties focus on all but factor one. In our view, factors two, three, and five overlap substantially and decide this case.[3]

A. FACTOR TWO: CONSTRUCTIVE KNOWLEDGE

Constructive knowledge is commonly understood to be "information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Kirby v. Macon County*, 892 S.W.2d 403, 409 (Tenn. 1994) (quoting Black's Law Dictionary 1062 (6th Ed. 1990)). Since 2014—the year of D.B.'s birth and related injuries—CCHS has posted to its website clear notices of its (and its employees) federally-designated status. For example, in 2014, under the website's "Patient Info" section, there was a webpage titled "FTC

---

[3] Because none of those factors support equitable tolling, we need not evaluate factor four, prejudice to the government. *See Kellum v. Comm'r of Soc. Sec.*, 295 F. App'x 47, 49–50 (6th Cir. 2008) (noting that factor four is immaterial absent other factors supporting equitable tolling).

Deeming Notice" clarifying that CCHS "receives HHS funding and has federal Public Health Service deemed status with respect to certain health or health-related claims, including medical malpractice claims, for itself and its covered individuals." That language provided Lundy with constructive knowledge of CCHS's and Dr. Mullinax's federal status and her likely need to comport with the FTCA's limitations period. *See Bazzo v. United States*, 494 F. App'x 545, 548 (6th Cir. 2012) (declining to equitably toll the statute of limitations on plaintiff's FTCA claim, noting that "counsel's review of the medical center's website could have alerted him to the center's '[f]ederally-designated' status").

According to Lundy, for that language to establish constructive knowledge, it would have had to appear in a more prominent part of the website, like the "About Us" page. She points to a screenshot of CCHS's "About Us" page taken in mid-April 2014, a month before D.B.'s birth, showing that no FTCA notices were present. But screenshots of the "About Us" page taken closer to the time of D.B.'s birth, and shortly thereafter—during the timeframe Lundy and her attorneys would have presumably been investigating CCHS's status in order to file suit—contain language stating that CCHS is "an FTCA deemed facility," that it "has medical malpractice liability protection through the . . . FTCA," and that under the Act, it is considered to be a "[f]ederal employee." So even if Lundy were correct that some notice had to be placed on a more prominent page, like the "About Us" page, CCHS did so during the relevant period.

To the extent Lundy contends that knowing CCHS's federal status was not enough to establish knowledge of Dr. Mullinax's status, she is mistaken. The publicly available address for Dr. Mullinax's place of work was a CCHS location in Tennessee. Lundy's counsel even sent a pre-suit notice letter to Dr. Mullinax at that address. The address should have tipped Lundy off

that Dr. Mullinax was an employee of CCHS and, according to CCHS's website, a "covered individual[]" under the FTCA.

### B. FACTOR THREE: DILIGENCE

To diligently investigate a claim, a plaintiff must inquire into not only whether the claim exists, but also who might be liable, and what, if any, restrictions apply to the claim's timeliness. *See A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 145 (2d Cir. 2011).

Lundy's assertion that she diligently investigated her son's claims and the defendants' potential liability comes up short. Other than hiring a law firm to review the case, she provides no specific information about what she did before the FTCA's limitations period expired that would excuse her failure to comply with the statute. And all we know about that first law firm's investigation is that it reviewed some medical records, and then advised Lundy that no action could be taken because it was not yet clear that her son's brain damage was sufficiently extensive.[4]

In *Bazzo*, we denied a plaintiff's claim for equitable tolling of the FTCA's limitations period because he failed to "detail what steps counsel took to determine [the defendant's] employment status," which related to the defendant's potential liability. 494 F. App'x at 548. The same failure is present in this case, and so the same outcome is warranted. *See Chomic*, 377 F.3d at 616 (6th Cir. 2004) (noting that a lack of due diligence can defeat a claim for equitable tolling). What's more, as in *Bazzo*, Lundy's "counsel's review of the medical center's website could have alerted him to the center's federally-designated status" and therefore to the center and its employees' coverage under the FTCA. 494 F. App'x at 548 (internal quotation marks omitted).

---

[4] Lundy does mention briefly that she experienced mental and physical challenges as a young mother taking care of a newborn with special needs, that she suffered an injury due to a car accident, and that she had to move from Tennessee to Florida so she could be closer to family. But she does not argue that any of those circumstances prevented her from diligently pursuing her claim; she argues that despite all of those challenges, she was able to pursue her claim diligently.

That neither Lundy nor her earlier counsel discovered the notice of federal designation publicly advertised on CCHS's website evinces a lack of diligence. *See Zappone*, 870 F.3d at 558; *A.Q.C. ex rel. Castillo*, 656 F.3d at 144–46 (holding that although plaintiff timely consulted counsel, counsel's lack of due diligence precluded equitable tolling of the FTCA's limitations period).[5]

Lundy submits that after her first counsel closed her case, she acquired new counsel who did diligently pursue her claim. Specifically, her new counsel attempted and failed to access the federal government's FTCA search tool to determine CCHS's status because the website was down. Her new counsel also attempted and failed to uncover medical records that might identify CCHS or Dr. Mullinax as federally deemed employees for purposes of tort coverage. But all of that alleged due diligence took place in 2017 and 2018, well after the FTCA's two-year limitations period had expired (in May of 2016), and therefore cannot serve as a predicate to toll the running of the FTCA's two-year statute of limitations. There is simply no evidence in the record establishing Lundy's or her first law firm's due diligence before the FTCA's limitations period expired. That lack of information is detrimental to Lundy's claim. *See Blanche v. United States*, 811 F.3d 953, 962 (7th Cir. 2016) (denying claim for equitable tolling where there was no evidence that counsel, for example, attempted to look up organization in FTCA search-tool database).[6]

---

[5] Lundy or counsel could have also asked CCHS directly about its status, or they could have presumably looked up CCHS in the United States Health Resources & Service Administration's "Federal Tort Claims Act Search Tool." *See* U.S. Dep't of Health & Human Servs., *FTCA Search Tool*, https://data hrsa.gov/tools/ftca-search-tool (last visited June 18, 2021). True, the database does not identify specific doctors, like Dr. Mullinax. But the publicly available address for Dr. Mullinax's place of work—a CCHS location in Tennessee—should have tipped them off to the fact that Dr. Mullinax was an employee of CCHS and covered by the database's federal designation of CCHS.

[6] To the extent post-limitations-period conduct is relevant to our inquiry, before Lundy's new counsel discovered that the FTCA's database website was down, the United States Department of Health Resources & Service Administration notified counsel, in response to Lundy's pre-suit notices, that CCHS and its employees were potentially covered under the FTCA and that the exclusive remedy for Lundy's claim would need to be made in accordance with the Act.

C.  FACTOR FIVE: REASONABLENESS

Finally, Lundy argues that it was reasonable for her not to examine CCHS's website or otherwise inquire too deeply into its status.  According to Lundy, CCHS purports to be a religious organization; its website is replete with biblical references and expressly Christian language.  And Lundy relates that, as a child, she was taught about the metaphoric wall of separation between church and state.  Thus, she believes it was reasonable to assume that, as a religious organization, CCHS could not be deemed a federal entity under the FTCA.  We disagree.

Lundy's assumption was unreasonable, especially considering that a review of the health center's website—just past the biblical references—would have notified her that CCHS and its employees are federal employees for purposes of defending against medical tort claims.  And counsel should know better than to adopt Lundy's assumption about CCHS's status.  The concept that the federal government is prohibited from affiliating with or aiding a religious institution "has consistently been rejected" by the Supreme Court.  *Hunt v. McNair*, 413 U.S. 734, 742 (1973).  "Interaction between church and state is inevitable . . . and we have always tolerated some level of involvement between the two."  *Agostini v. Felton*, 521 U.S. 203, 233 (1997) (citation omitted).

IV.

In the end, Lundy fails to show that her inability to comply with the FTCA's two-year statute of limitations was due to unavoidable circumstances beyond her control.  So we affirm.