**In the Matter of James M. DONNAN, III, Mary W. Donnan, Debtors.**

**Kendrell Bell, Movant**

**v.**

**James M. Donnan, III and Mary W. Donnan, Respondents.**

**No. 11–31083 JPS.**

United States Bankruptcy Court, M.D. Georgia, Athens Division.

Feb. 15, 2012.

Michael F. Hanson, The Hanson Firm, LLC, Atlanta, GA, Brian D. Gwitt, Damon Morley LLP, Buffalo, NY, for Movant.

Edward D. Tolley, Cook Noell Tolley & Bates LLP, Ernest V. Harris, Harris & Liken, LLP, Athens, GA, for Debtors.

## *ORDER*

JAMES P. SMITH, Bankruptcy Judge.

This matter presents the question of whether, under the facts of this case, the deadline for filing a complaint objecting to the dischargeability of a debt should be equitably tolled so as to allow a creditor to file his complaint after the deadline has expired.

Kendrell Bell ("Bell") filed his motion to extend the time to file a complaint objecting to the dischargeability of his claim (Docket No. 181) supported by a declaration pursuant to 28 U.S.C. § 1748 [sic].[1] James M. Donnan, III ("Donnan") filed his objection to the motion supported by his affidavit. At the hearing on the motion held on January 25, 2012, by agreement of counsel, the declaration and affidavit were accepted into evidence as proffers of direct testimony and thereafter Bell and Donnan both submitted to cross-examination and redirect examination. After considering the evidence, the arguments of counsel and the relevant law, the Court publishes the following decision.

James and Mary W. Donnan ("Debtors") filed their voluntary Chapter 11 petition on July 1, 2011. In numerous proceedings in this Court,[2] it has been alleged that Donnan engaged in and profited from a "Ponzi scheme"[3] by which he solicited investments in GLC, Ltd. ("GLC"), a company now in Chapter 11 proceedings in the Southern District of Ohio (Case No. 11–11090). Although Donnan has admitted that he was involved with GLC, he has denied any wrong doing. None of the matters in which these allegations against Donnan have been made have come to trial and thus there has been no decision in this Court as to the nature of his involvement.

Bell contends that, through Donnan's encouragement and solicitation, he invested and lost two million dollars in GLC. Bell contends that he is a victim of the alleged Ponzi scheme perpetrated by Donnan. Bell contends that he has a claim for fraud against Debtors[4] that is nondischargeable in bankruptcy.

Bell admits that he received from the Court the bankruptcy notice of Donnan's case filing which contained the September 30, 2011 deadline to file complaints to determine dischargeability of debts. Although, after obtaining counsel, Bell timely filed a proof of claim in the case, Bell did not file, prior to the expiration of the dead-

---

1. There is no 28 U.S.C. § 1748. This is obviously a typographical error and was intended to refer to section 1746. Under section 1746, an unsworn declaration is recognized as being equivalent to a sworn affidavit.

2. *See, e.g., GLC Limited v. Donnan,* A.P. No. 11–3050, *Jennings v. Donnan,* A.P. No. 11–3075 and *Fennell v. Donnan,* A.P. No. 11–3088.

3. "The term 'Ponzi scheme' is derived from Charles Ponzi, a famous Boston swindler. With a capital of $150, Ponzi began to borrow money on his own promissory notes at a 50 % rate of interest payable in 90 days. Ponzi

collected nearly $10 million in 8 months beginning in 1919, using the funds of new investors to pay off those whose notes had come due. Generically, a Ponzi scheme is a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors." *U.S. v. Silvestri,* 409 F.3d 1311, 1317 n. 6 (11th Cir.) (quotations and citations omitted) *cert. denied,* 546 U.S. 1048, 126 S.Ct. 772, 163 L.Ed.2d 598 (2005).

4. Bell contends that Donnan's wife, Mary Donnan, also received funds through the alleged Ponzi scheme.

line, a complaint objecting to the dischargeability of his claim or a motion to extend the deadline. In his motion before the Court, Bell now asks that the deadline be equitably tolled and that he be allowed to file a late complaint objecting to the dischargeability of his claim.

Donnan is a former head football coach for the University of Georgia. Bell played football for the University during 1999 and 2000 while Donnan was head coach. Bell contends that, due to the special relationship between a coach and a player, Donnan was in a position of great influence over him. Bell contends that he held Donnan in awe and placed great trust in him. He contends that he missed the dischargeability deadline because, in reliance upon his special relationship with Donnan, he allowed Donnan to induce him to take no action in the bankruptcy case.

Bell contends that his claim against Debtors is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2), (4) or (6). Pursuant to 11 U.S.C. § 523(c)(1), a debt specified in section 523(a)(2), (4), or (6) will nevertheless be discharged:

> . . . unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge
>
> . . .

Pursuant to Bankruptcy Rule 4007(c), a complaint to determine dischargeability of a debt under section 523(c) must be filed no later than sixty days after the first date set for the meeting of creditors under section 341(a). In this case, the meeting of creditors was scheduled for August 1, 2011 and the deadline to file complaints to determine dischargeability was September 30, 2011.

Although on motion of a party in interest, and after notice and hearing, the court can extend this deadline, the motion must be filed before the deadline expires. Rule 4007(c). Further, under Rule 9006(b)(3), the court may not extend the deadline if the motion is not filed prior to expiration of the deadline.

In considering Rule 4004[5], which prescribes the deadline for filing complaints objecting to discharge under 11 U.S.C. § 727, the Supreme Court has held that the deadline is not jurisdictional in nature and is subject to waiver. *Kontrick v. Ryan*, 540 U.S. 443, 124 S.Ct. 906, 915–18, 157 L.Ed.2d 867 (2004). In that case, the Supreme Court declined to rule on whether equitable tolling affords relief from the deadline. 540 U.S. at 457, 124 S.Ct. at 916. However, the Supreme Court has stated that "[s]tatutory filing deadlines are generally subject to the defenses of waiver, estoppel, and equitable tolling." *United States v. Locke*, 471 U.S. 84, 94 n. 10, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985).

To date, the Eleventh Circuit has also declined to rule on whether equitable tolling affords relief from the Rule 4007 deadline. *Alabama Dept. of Economic and Community Affairs v. Lett*, 368 Fed.Appx. 975, 979 n. 3 (11th Cir.2010). However, in the case of *Byrd v. Alton (In re Alton)*, 837 F.2d 457 (11th Cir.1988), the court refused to grant equitable relief under Rule 4007 to a creditor who had actual notice of the bankruptcy filing before the deadline expired but took no steps to inquire into the deadline date even though the creditor was not originally listed as a creditor in the bankruptcy case and thus did not receive from the court the bankruptcy notice which contained the deadline. Further, in the case of *Durham Ritz, Inc.*

---

**5.** The relevant provisions for granting an extension of time under Rule 4004(b) and Rule 4007(c) are identical.

*v. Williamson (In re Williamson)*, 15 F.3d 1037 (11th Cir.1994), the court refused to grant equitable relief under Rule 4007 where the creditor had actual notice of the case and failed to inform himself of the deadline even though the bankruptcy notice from the court stated that the deadline was "to be set". On the other hand, the Eleventh Circuit has recognized equitable tolling in the bankruptcy arena by holding, in connection with the limitations period under 11 U.S.C. § 546(a)[6]:

> Where, despite the exercise of due diligence, a trustee fails to timely bring an avoidance action due to fraud or extraordinary circumstances beyond the trustee's control, equitable tolling prevents the expiration of § 546(a)'s limitations period. *In re Levy*, 185 B.R. 378 (Bank. S.D.Fla.1995). *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991).

*IBT Int'l Inc. v. Northern (In re Int'l Admin. Services, Inc.)*, 408 F.3d 689, 700–01 (11th Cir.2005).

The doctrine of equitable tolling has been recognized by this Court to provide relief from the Rule 4007 deadline. In *Penland v. Bryan (In re Bryan)*, 448 B.R. 866 (Bank.M.D.Ga.2011), this Court stated:

> However, in appropriate circumstances, several courts have applied the doctrine of equitable tolling to allow an otherwise untimely motion to extend. *See In re Phillips*, 288 B.R. 585 (Bankr.M.D.Ga. 2002) (Walker, J.) (allowed creditor an opportunity to show why equitable tolling should allow its untimely filed dischargeability objection). *See also European American Bank v. Benedict (In re Benedict)*, 90 F.3d 50, 54–55 (2nd Cir. 1996) (Rule 4007(c) time period is subject to equitable tolling); *Le Grand v.*

*Harbaugh (In re Harbaugh)*, 301 B.R. 317, 320 (8th Cir. BAP 2003); *Saddle River Valley Bank v. Garsia*, 2010 WL 4929268 (D.N.J., Nov. 30, 2010); *Wilkerson Fuel Inc. v. Elliott*, 415 B.R. 214, 221–22 (BankrD.S.C.2009); *Wahrman v. Bajas, (In re Bajas)* 443 B.R. 768, 773 (Bankr.E.D.Mich.2011); *First Bank System v. Begue (In re Begue)*, 176 B.R. 801, 804 (Bankr.N.D.Ohio 1995).

In *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337 (6th Cir.2003), the Sixth Circuit held that equitable tolling allowed a creditor's motion to extend the time filed three days after the bar date. The court stated:

> There are five factors that should be considered when deciding to apply the doctrine of equitable tolling: "The factors are (1) lack of actual notice of filing requirements; (2) lack of constructive knowledge of filing requirements; (3) diligence in pursing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirements." *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir.1988). 340 F.3d at 344.

*Id.* at 868–69.

In *Bryan*, the debtor did not list the creditor in his initial bankruptcy filings and therefor the creditor did not receive notice of the bankruptcy or the deadline. The creditor did not become aware of the bankruptcy until four days before the deadline when she received an amendment by the debtor to his bankruptcy schedules adding her as a creditor. Due to an intervening weekend and the Thanksgiving holidays, the creditor was unable to make contact with the debtor's attorney, even though she tried several times. She filed, *pro se*, a complaint objecting to discharge-

---

**6.** 11 U.S.C. § 546(a) prescribes the time within which a trustee may file avoidance actions.

ability thirteen days after the deadline. This Court treated the *pro se* complaint as a motion to allow a late filing and found that, under those circumstances, equitable tolling was warranted.

The present case does not present these types of facts. Bell acknowledges that he received the bankruptcy notice which contained the deadline. He does not contend that he received the notice untimely. Further, although he retained counsel shortly after October 6, 2011 and timely filed a proof of claim,[7] he waited until December 6, 2011, more than two months after the deadline to file his extension motion. There has been no explanation as to why he waited so long to ask for the extension.

Bell relies on the case of *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318 (11th Cir.1989). In that case, the plaintiff filed her complaint for damages after the expiration of a contractual statute of limitations. Prior to the expiration of the limitations period, the plaintiff's lawyer had contacted the defendant to make a demand regarding the damages. However, he was advised by defendant's claims agent that the plaintiff had signed a release of liability and that the defendant had paid all of her medical bills. The district court held that this conduct estopped the defendant from asserting the contractual limitations period as a defense to the action.

On appeal, the Eleventh Circuit held:

> To successfully invoke the doctrine [of equitable estoppel], the late arriving plaintiff must show that she was mislead by defendant or its agents so that [s]he delayed suit because of (a) affirmative statement that the statutory period to bring the action was longer than it actu-

ally was, or (b) promises to make a better settlement of the claim if plaintiff did not bring suit or (c) comparable representations and conduct. *Burke v. Gateway Clipper, Inc.*, 441 F.2d 946, 949 (3d Cir.1971) (footnotes omitted); see also *Atkins v. Union Pacific Railroad Co.*, 753 F.2d 776, 777 (9th Cir.1985); *Sanchez v. Loffland Bros. Co.*, 626 F.2d 1228, 1231 (5th Cir.1980), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1981).

> *Part (c) in the foregoing list of estoppel-creating deceptions is a catch-all encompassing all manner of conduct analogous to the rather specific examples set forth in parts (a) and (b).* Contemplated by the broad third category is the behavior described by the district court, namely that [the defendant], through its claims manager, falsely stated to [plaintiff's] attorney that it had secured a release from liability from [plaintiff] and had paid her medical bills in full. Moreover the district court found that reliance upon these representations resulted in confusion and delay, causing [the plaintiff's] claim to be filed after the contractual deadline had passed. The record supports these factual findings by the district court, and [plaintiff] therefore has proved the elements needed to create an estoppel.

867 F.2d at 1323–24. (emphasis supplied). As this case shows, the key to being entitled to equitable relief is some deception by the debtor relating to the deadline.

■ The evidence establishes that, at some time, Donnan had guaranteed Bell that he would get his money back[8] and had told Bell that he would be taken care of.[9] However, simply making promises to

---

7. The claims register reflects that his claim was filed on October 20, 2011, before the claims filing deadline of October 31, 2011.

8. It is unclear when this guarantee was made.

9. The Court notes that both Debtors and GLC have filed competing plans and disclosure statements addressing how claims are to be treated in this case. Neither has been ap-

take care of a creditor, and even guaranteeing payment, does not equate to deceptive conduct relating to the dischargeability objection deadline that would justify equitable tolling.

In fact, the Court can find no deceptive conduct on Donnan's part in connection with his postpetition communications with Bell. At the evidentiary hearing on Bell's motion, Bell acknowledged that he never discussed the dischargeability objection deadline or any other filing deadline with Donnan. He admitted that Donnan did not tell Bell that he would be better off in the bankruptcy if he did not file something. He admitted that Donnan never advised him not to get a lawyer nor did Donnan advise Bell not to file a dischargeability complaint. In fact, he admitted that he and Donnan never discussed whether Bell should or should not file anything in the case. And, although Bell testified in his declaration that Donnan had told him not to talk with reporters or lawyers, Bell acknowledged in response to questions by the Court that Donnan had said this in connection with the GLC bankruptcy case, not in connection with Donnan's own case.

The text of Rules 4007 and 9006 and their development support the conclusion that the dischargeability objection deadline should be extended after it has expired in rare cases only. As the Fifth Circuit explained in *Neeley v. Murchison*, 815 F.2d 345 (5th Cir.1987):

> The predecessor of Rule 4007, Rule 409(a)(2), directed the court to fix a time for determining the dischargeability of a debt "not less than 30 days nor more than 90 days after the first date set for the meeting of creditors." Rule 409(a)(2) required the court to give creditors "at least 30 days' notice of the time or fixed." That Rule also permitted the court to extend the time for filing dischargeability complaints "for cause, on its own initiative or on application of any party in interest." The court could grant a late-filed request for an extension of time for "excusable neglect," under Rule 906(b) (now amended and designated as Rule 9006(b)). *See In re Figueroa*, 33 B.R. 298 (Bankr.S.D.N.Y. 1983) (describing the evolution of these rules).
>
> By contrast, Rule 4007 sets a fixed limitation period of 60 days and further constrains the granting of extensions. The bankruptcy court can extend the time only if the creditor has filed a motion before the 60-day period expires, and then only "for cause." Rule 9006(b)(3) explicitly excepts Rule 4007(c) from the "excusable neglect" standard, permitting time enlargement "only to the extend and under the conditions" stated in Rule 4007.
>
> These departures from past practice, as embodied in Rule 4007(c), evince a strong intent that the participants in bankruptcy proceedings be assured that, within the set period of 60 days, they can know which debts are subject to an exception to discharge. This fixed, relatively short limitation period enables the debtor and creditors to make better-informed decisions early in the proceeding. In Chapter 11 cases, the debtor is better able to formulate a timely reorganization plan and the creditors are better able to evaluate the feasibility of the plan.

*Id.* at 346–47.

Finally, in light of the dichotomy in treatment of untimely motions under

---

proved by the Court. During the confirmation process, these plans may be modified and other plans may be proposed. Thus, it is

unknown at this time how Bell's claim and the other claims in this case will be treated.

Rules 9006(b)(1) which allows late filings for "excusable neglect" and 9006(b)(3) which does not, the Eleventh Circuit's decisions on "excusable neglect" under Rule 9006(b)(1) provide guidance on application of the more strict requirements of Rule 9006(b)(3). In the case of *ITT Commercial Finance Corp. v. Dilkes (In re Analytical Systems, Inc.)*, 933 F.2d 939 (11th Cir.1991), the court considered the issue of "excusable neglect" in connection with a late filed proof of claim. In that case, Dunning was the chief executive officer of the Chapter 11 debtor. His then wife and her company were scheduled as creditors of the debtor and received the bankruptcy notice which included the deadline for filing proofs of claims. When the wife questioned Dunning about the notice, he told her she did not have to file a proof of claim because her claims were scheduled. However, he did not tell her that the schedules had listed her claims at a significantly reduced amount. During her subsequent divorce proceedings from Dunning, the wife discovered the claim reduction and sought to file a proof of claim more than 14 months after the deadline. Notwithstanding the confidential marital relationship between a husband and wife, the Eleventh Circuit found that there had been no evidence of actual fraud and that the wife's failure to determine the accuracy of how her claims were listed was within her reasonable control. Accordingly, the court refused to find excusable neglect.

■ This Court finds that there has been no deception or actual fraud about the dischargeability objection deadline by Donnan in his communications with Bell. Having received the notice of bankruptcy, Bell had notice of the deadline. In light of *Analytical Systems*, it is clear that Bell could not meet the standard of excusable neglect if it applied. Thus, the facts in this case do not support equitable relief under the more strict requirements of Rule 9006(b)(3).

For the reasons stated herein, Bell's motion to extend the time to file a complaint objecting to the dischargeability of his claim (Docket No. 181) is denied.

**SO ORDERED.**