**In the Matter of Timothy P. HARPER, Debtor.**

**United Community Bank, Plaintiff,**

v.

**Timothy P. Harper, Defendant.**

**Bankruptcy No. 11–14105–WHD.
Adversary No. 12–1080.**

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Jan. 29, 2013.

Nation knew that its repossession and retention of the Nettles's vehicle violated the automatic stay.

Paul G. Durdaller, Stites & Harbison PLLC, Atlanta, GA, for Plaintiff.

H. Matthew Horne, Rosenzweig, Jones, Horne & Griffis, P.C., Newnan, GA, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT OF UNITED COMMUNITY BANK TO DETERMINE DISCHARGEABILITY OF DEBT

W. HOMER DRAKE, Bankruptcy Judge.

#### INTRODUCTION

The above-styled Chapter 7 case comes before the Court on Timothy P. Harper's (hereinafter the "Debtor" or "Defendant")

Motion to Dismiss Complaint, submitted on December 20, 2012 in response to United Community Bank's (hereinafter the "Creditor" or "Plaintiff") Complaint to Determine Dischargeability of Debt filed on November 20, 2012. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I) & (J); § 1334.

Because there are no material issues of factual dispute in this case, an evidentiary hearing would be unnecessary. *See McMillen v. Syndicated Office Sys., Inc. (In re McMillen)*, 440 B.R. 907, 910 (Bankr.N.D.Ga.2010) (Bihary, B.J.) ("[A] judgment on the pleadings is appropriate when there are no issues of material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.1998))); *see also In re Faillace*, Case No. A04–93282–PWB, slip op. at 1 (Bankr.N.D.Ga. Sept. 17, 2004) (Bonapfel, B.J.) ("Because there is no factual dispute in this case, an evidentiary hearing is not required."). In reviewing the motion, the Court accepts the facts as stated in the pleadings and views them in the "light most favorable to the nonmoving party." *McMillen*, 440 B.R. at 910 (citing *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir.2008)).

### STATEMENT OF FACTS

On December 13, 2011 (hereinafter the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (hereinafter the "Code"), in the Northern District of Georgia, Newnan Division. The meeting of creditors was scheduled for January 19, 2012, in accordance with 11 U.S.C. § 341(a)[1], and the time set for objections to discharge was established as March 19, 2012. The Plaintiff acknowledges receiving notice of this deadline.

By consent order, dated March 7, 2012, the period for the Plaintiff's filing of a complaint objecting to discharge was extended to September 19, 2012, and by another motion filed before the expiration of this new deadline, a second consent order, dated September 20, 2012, extended the Plaintiff's period for filing a complaint objecting to discharge to November 18, 2012. Because November 18, 2012 was a Sunday, the time to file a complaint objecting to discharge was further lengthened to November 19, 2012, pursuant to Federal Rule of Bankruptcy Procedure (hereinafter "Rule(s)") 9006(a)(1)(C)[2].

During this interval, the Plaintiff used this time to depose the Debtor and his wife and to pursue settlement negotiations. On October 25, 2012, the settlement discussions terminated without an agreement. At this juncture, the Debtor was aware that the Creditor intended to file a complaint to determine the dischargeability of its debt. On the Friday before the deadline, counsel for the Plaintiff sought con-

---

1. 11 U.S.C. § 341(a) states that "[w]ithin a reasonable time after the order for relief in a case under this title, the United States Trustee shall convene and preside at a meeting of creditors." 11 U.S.C. § 341(a).

2. Rule 9006(a)(1)(C) provides "The following rules apply in computing any time period specified in these rules, in the Federal Rules of Civil Procedure, in any local rule or court order or in any statute that does not specify a method of computing time. (1). . . . When the period is stated in days or a longer unit of time: . . . (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." FED. R. BANKR.P. 9006(a)(1)(C).

sent from the Debtor for a third enlargement of the period, through and including November 30, 2012. The Debtor denied the Plaintiff's request[3], and no motion was filed with the Court for a further extension, resulting in the deadline remaining November 19, 2012.

On the night of the deadline, the Plaintiff did not initiate the process of electronically filing its Complaint and Exhibits onto the Court's CM/ECF system until 11:45 P.M. The task was left in the hands of a trained and, apparently, very capable paralegal[4]. Upon commencing the uploading of the complaint, the Plaintiff began to have difficulties. The Plaintiff's computers failed to attach the complaint and proceed to the next step, and continuously became unresponsive[5], or in other words, it "froze." This required the Plaintiff to reinitiate the process. After successfully uploading the complaint, the Plaintiff began to upload the two exhibits, but again the computer froze, prompting the Creditor to once again restart the entire process, including refiling the complaint. On this third attempt, the paralegal was instructed to only submit the complaint. After another temporary delay, the complaint uploaded to the system. The time stamp for the filing was 12:02:44 on November 20, 2012[6].

The following morning, the Plaintiff communicated with Irene Wiggins, the CM/ECF Administrator for the Bankruptcy Court, and explained its difficulties from the night before. In response to an inquiry regarding whether to file a "Notice of Technical Difficulties," Ms. Wiggins responded that there was "nothing wrong with CM/ECF" system during the time period that the Plaintiff sought to upload the complaint[7]. In response to Ms. Wiggins statements, the Plaintiff consciously took no steps under the Northern District of Georgia Bankruptcy Court CM/ECF Administrative Procedures, by motion and affidavit or by facsimile transmission, for rectifying an untimely filing due to techni-

---

3. At this time, the Bank of the Ozarks was also involved in these negotiations, and earlier the same day, the Debtor granted its request for a similar extension.

4. The paralegal had been employed in this position, or one like it, for over twenty years and had been trained to use the CM/ECF system since 2003.

5. The unresponsiveness was not the result of the size of the files being uploaded, because the entire size of the complaint and two exhibits totaled less than 1.5 megabytes, well below the 5.0 megabyte size limit set by the Court.

6. Rule 9006(a)(4) defines the "end" of the last day for electronic filing as "midnight in the court's time zone...." FED. R. BANKR.P. 9006(a)(4).

7. The Northern District of Georgia Bankruptcy Court's CM/ECF Administrative Procedures fail to address what constitutes a technical failure of the CM/ECF system. However, because this Court is a unit of the district court, see 28 U.S.C. § 151, the rules and procedures which govern the district court and which do not contradict bankruptcy rules and procedures should be applied. See BLR 1001-3, N.D.Ga. ("These [Local] Rules supplement the Local Rules of Practice for the United States District Court for the Northern District of Georgia...."). According to Appendix H to the Northern District of Georgia Local Rules, the "Clerk's Office shall deem the Northern District of Georgia ECF site to be subject to technical failure on a given day if the site is unable to accept filings *continuously or intermittently* over the course of any period of time greater than one hour after 10:00 A.M. that day.... Problems on the filer's end, such as ... problems with the filer's Internet Service Provider (ISP), or hardware or software problems, will not constitute technical failure under these procedures nor excuse untimely filing." LR, N.D.Ga., Appendix H, Ex. A, § II(H) (emphasis added).

cal failure[8]. On December 20, 2012, the Debtor file the instant motion to dismiss based on Plaintiff's failure to timely file its complaint to determine dischargeability of a debt.

## CONCLUSIONS OF LAW

### A.

■ Generally, a Chapter 7 debtor is entitled to a discharge from all pre-petition debts. *See* 11 U.S.C. § 727(a). This discharge is intended to promote the Bankruptcy Code's objective toward providing a "fresh start" for the "honest but unfortunate debtor," but not necessarily the dishonest one. *In re Moseley*, 470 B.R. 223, 225 (Bankr.M.D.Fla.2012) (citing *United States v. Fretz (In re Fretz)*, 244 F.3d 1323, 1326 (11th Cir.2001)). To that purpose, Congress created various exceptions to the dischargeability of certain debts. *See generally* 11 U.S.C. § 523(a)(1)–(19).

The Plaintiff's complaint asserts that under Section 523(a)(2), the debt should not be discharged because of the Debtor's false representations and because of the Debtor's presentation of false documents, both made to the Plaintiff and advanced by the Debtor for the purpose of guaranteeing a loan conferred by the Plaintiff. Debts that meet the provisions of 11 U.S.C. 523(a)(2) are not automatically excepted from discharge. In fact, the Code provides that such debts will actually be discharged, except as provided in 11 U.S.C. § 523(a)(3)(B) (which does not apply in this case), or "unless on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines" otherwise. 11 U.S.C. § 523(c).

■ The proper process for objecting to the discharge of a certain debt is to initiate an adversary proceeding by filing a complaint, *see* FED. R. BANKR.P. 7001(4) & (6); *see also* FED. R. BANKR.P. 7003, and the Code sets the deadline for the filing of such a complaint, objecting to discharge under Section 523(c) of the Code, at sixty (60) days after the first date set for the meeting of creditors under 11 U.S.C. § 341. *See* FED. R. BANKR.P. 4007(c). Additionally, Rule 4007(c) does not permit extensions, if sought after the expiration of this time frame, *id.*, and the Court is only authorized to extend it as prescribed within the Rule. *See* FED. R. BANKR.P. 9006(b)(3). However, the Plaintiff believes that this Court may stretch the deadline, notwithstanding the plain language in the Rules, by "equitably tolling" the sixty day deadline period under the equitable powers granted in Section 105 of the Code.

### B.

■ Although other Circuits have recognized equitable tolling in the context of Rule 4007(c)[9], the Eleventh Circuit has

---

8. The Northern District of Georgia Bankruptcy Court's CM/ECF Administrative Procedures provide that "a Participant whose electronic filing is made untimely as the result of a technical failure of *the Court's CM/ECF system* may seek appropriate relief by motion and must attest by affidavit ... to having made reasonable attempts to file electronically.... If a Participant will be unable to complete an electronic filing prior to the legal deadline" due to such failure, then the "Participant should fax the pleading showing the original signatures to the Clerk.... The faxed documents will be deemed filed as of the minute the first page is received...." N.D. GA. BANRK. CT. CM/ECF ADMIN. P. § III(F) (2008) (emphasis added).

9. The Second, Sixth and Seventh Circuits have allowed equitable tolling in certain situations. *See United States v. All Funds Distributed to or o/b/o Weiss*, 345 F.3d 49, 54 (2nd Cir.2003); *European Am. Bank v. Benedict (In re Benedict)*, 90 F.3d 50, 54 (2nd Cir.1996); *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337, 344 (6th Cir.2004) (requiring extraordinary circumstances); *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209

held that the Rule 4007 time restriction is not subject to such an equitable remedy. *See Byrd v. Alton (In re Alton)*, 837 F.2d 457 (11th Cir.1988). In *Byrd*, the debtor neglected to list the creditor in the schedules, but had generally noticed the creditor of the pending bankruptcy, although such notice failed to indicate the date the debtor actually filed for Chapter 11 relief or the date set for the creditors meeting. *Id.* at 458. Additionally, because Byrd was never listed as a creditor, neither he nor his attorney was notified by the court of the creditors meeting or the deadline for filing complaints concerning the dischargeability of debts. *Id.* As a consequence, Byrd failed to file his dischargeability action in a timely manner, and the bankruptcy court denied Byrd's post-deadline motion to enlarge the period. *Id.*

On appeal, Byrd argued numerous grounds for relief, including that the principles of equity demanded that he be allowed to file his complaint, as it was the debtor's own conduct, by not scheduling him as a creditor, which caused him to miss the deadline. *Id.* Although the Eleventh Circuit gave some attention to the actual substance of Byrd's equitable argument[10], the appellate court found that the time period in Rule 4007(c) is absolute:

> The dictates of the Code and Rules are clear. It is not our place to change them. Under Rule 4007(c), any motion to extend the time period for filing a dischargeability complaint must be made before the running of that period. There is almost universal agreement that the provisions of F.R.B.P. 4007(c) are mandatory and do not allow the Court any discretion to grant a *late filed* motion to extend time to file a dischargeability complaint."

*Id.* at 459 (internal quotations omitted) (emphasis in the original). Therefore, under *Byrd*, this Court is without discretion to extend the deadline outside of the methods prescribed in Rule 4007(c).

The Plaintiff argues that *Byrd* was abrogated by the Supreme Court's ruling in *Kontrick v. Ryan*, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004), which pertains to the forfeiture of one's right to assert untimeliness, when first raised after the complaint had been adjudicated on the merits. In *Kontrick*, the creditor untimely filed his complaint objecting to discharge under Rule 4004[11] of the Code, but the debtor did not promptly move for dismissal of the pleading as impermissibly late. *Kontrick v. Ryan*, 540 U.S. 443, 446, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). Only after the case was litigated on the merits did the debtor object to its timeliness, *id.*, maintaining that the Rules had the "same import as provisions governing subject-matter jurisdiction,"[12] and that therefore,

F.3d 552, 561 (6th Cir.2000) (finding that federal courts "sparingly bestow" equitable tolling); *In re Kontrick*, 295 F.3d 724, 733 (7th Cir.2002).

10. The Eleventh Circuit agreed with the bankruptcy court that the creditor was sufficiently noticed of the actual bankruptcy proceeding as to place him on inquiry notice as to any appropriate deadlines, and that his own inaction defeated any argument on the equities. *See Byrd v. Alton (In re Alton)*, 837 F.2d 457, 458–459 (11th Cir.1988).

11. As noted in *Kontrick*, Rule 4007(c) essentially applies the same time prescriptions as Rule 4004(b) and "tracks Rule 4004(a) and (b), and Rule 9006(b)(3) lists 4007(c) as well as 4004(a) among the time prescriptions bankruptcy courts may enlarge only to the extent under the conditions stated [in the rules themselves]." *Kontrick v. Ryan*, 540 U.S. 443, 448 n. 3, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004).

12. "A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance." *Id.* at 455, 124 S.Ct. 906.

they were "mandatory," unalterable, and could not be waived. *Id.* at 451–455, 124 S.Ct. 906.

The Supreme Court disagreed. The *Kontrick* Court found that the Rules do not "create or withdraw federal jurisdiction." *Id.* at 453, 124 S.Ct. 906. Accordingly, the Court held that Rule 4004 and 9006(b), and by extension 4007(c), are no more than "claim processing rules that do not delineate what cases bankruptcy courts are competent to adjudicate." *Id.* at 454, 124 S.Ct. 906.

The Plaintiff acknowledges that the Eleventh Circuit has not addressed equitable tolling in the context of Rule 4007 since *Kontrick* was decided, but in light of that decision, urges this Court to apply equitable remedies to Rule 4007(c) under general principles pertaining to statutory time limitations[13]. Indeed, some courts have found that *Byrd* is no longer good law after the Supreme Court's ruling in *Kontrick. See e.g. DeAngelis v. Rychalsky (In re Rychalsky),* 318 B.R. 61, 63 (Bankr. D.Del.2004) (understanding the *Byrd* holding, that the filing could not be equitably tolled, to be predicated on the deadline being jurisdictional in nature, and finding *Byrd* unpersuasive since the Supreme Court ruled that such was not the case).

Three difficulties make it hard for this Court to adhere to that line of reasoning. First, the holding in *Byrd* is not premised on Rule 4007(c)'s deadline being jurisdictional. As a matter of fact, the word "jurisdiction" makes no appearance in the entire *Byrd* opinion. *See generally Byrd v. Alton (In re Alton),* 837 F.2d 457 (11th Cir.1988). Nor does the word jurisdictional "appear in either of the two cases— *Neeley v. Murchison* and *In re Maher* [51 B.R. 848 (Bankr.N.D.Iowa.1985) ]—that

[*Byrd v.*] *Alton* principally relies on." *In re Moseley,* 470 B.R. 223, 227 (Bankr. M.D.Fla.2012). This is not to say that other courts have not relied on that rationalization, only that *Byrd* is not one of them.

 Secondly, the development of Rules 4007 and 9006 provide strong evidence that the deadlines associated with the rules were intended to be as hard and fast as possible. As the Fifth Circuit explained:

> The predecessor of Rule 4007, Rule 409(a)(2), directed the court to fix a time for determining the dischargeability of a debt "not less than 30 days nor more than 90 days after the first date set for the meeting of creditors." Rule 409(a)(2) required the court to give creditors "at least 30 days' notice of the time so fixed." That Rule also permitted the court to extend the time for filing dischargeability complaints "for cause, on its own initiative or on application of any party in interest." The court could grant a late-filed request for an extension of time for "excusable neglect," under Rule 906(b) (now amended and designated as Rule 9006(b)). *See In re Figueroa,* 33 B.R. 298 (Bankr.S.D.N.Y. 1983) (describing the evolution of these rules).

> By contrast, Rule 4007 sets a fixed limitation period of 60 days and further constrains the granting of extensions. The bankruptcy court can extend the time only if the creditor has filed a motion before the 60—day period expires, and then only "for cause." Rule 9006(b)(3) explicitly excepts Rule 4007(c) from the "excusable neglect" standard, permitting time enlargement "only to

---

13. "It is hornbook law that limitations periods are customarily subject to equitable tolling...." *In re Phillips,* 288 B.R. 585, 593

(Bankr.M.D.Ga.2002) (quoting *Young v. United States,* 535 U.S. 43, 49–50, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002)).

the extent and under the conditions" stated in Rule 4007.

*Neeley v. Murchison,* 815 F.2d 345 (5th Cir.1987). It is a common cannon of legal construction that Congress is presumed to act intentionally and purposefully when drafting legislation (or Rules), and that "where Congress knows how to say something but chooses not to, its silence is controlling." *Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians,* 563 F.3d 1205, 1209 (11th Cir.2009). Because Congress consciously chose to limit the discretion of bankruptcy judges in this matter, its departure from past practices evinces an intent that the filing of a complaint under Rule 4007(c) be completed, irrefutably, before the expiration of the relevant time period.

■ Finally, the *Kontrick* Court specifically declined to address whether its ruling permitted equitable tolling. *See Kontrick v. Ryan,* 540 U.S. 443, 457, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) ("Whether the Rules, despite their strict limitations, could be softened on equitable grounds is therefore a question we do not reach."); *see also id.* at 458, 124 S.Ct. 906 ("We can assume, *arguendo,* that had Kontrick timely asserted the untimeliness of Ryan's amended complaint, Kontrick would have prevailed in the litigation. The question, in that event, would have been whether the time restrictions in the [sic] Rules are in such emphatic form as to preclude equitable exceptions.") (emphasis in the original) (internal quotations omitted). Under controlling Eleventh Circuit precedent, when the Supreme Court is not "clearly on point," prior decisions by the Eleventh Circuit that are on point continue as good law. *See In re McNeal,* 477 Fed.Appx. 562, 564 (11th Cir.2012) ("Under our prior panel precedent rule, a later panel may depart from an earlier panel's decision only when the intervening Supreme Court decision is 'clearly on point.' " (quoting *Atl. Sounding Co., Inc. v. Townsend,* 496 F.3d 1282, 1284 (11th Cir.2007))). Because *Kontrick* is not clearly on point, and in fact avoids the question before the Court today, *Byrd* is still good law and, thus, binding on this Court.

This decision is supported by the fact that this Court is not the only bankruptcy court in this Circuit to hold that current Eleventh Circuit precedent remains binding. *See e.g. In re Hilton,* Case No. A05–63964–REB, slip op. at 2 (Bankr.N.D.Ga. Nov. 6, 2005) (Brizendine, B.J.) ("No doubt, the rationale set forth in *Phillips* is compelling and *Kontrick* may herald time when the time periods in F.R.B.P. 4004 and 4007 lose their legal effect as strict rules of jurisdictional import, but given the facts presented herein, this Court is not persuaded at this time that the law as construed by the Eleventh Circuit does not apply."); *In re Moseley,* 470 B.R. 223, 227 (Bankr.M.D.Fla.2012) ("For those reasons, [*Byrd v.*] *Alton* is still binding precedent in the Eleventh Circuit."); *W. Union Fin. Serv., Inc. v. Mascarenhas (In re Mascarenhas),* 382 B.R. 857, 859 (Bankr. S.D.Fla.2008) ("[I]n the absence of binding precedent created by [*Byrd v.*] *Alton,* [I] would be inclined to deny the Motion to dismiss."). But even if this Court were not persuaded as to the precedential effect of *Byrd,* the exceptions to a hard and fast interpretation, as evidenced by the disparate cases within the Circuit, would still not afford the Plaintiff any relief, because the extension of equitable relief in those cases has been permitted only in very limited circumstances, none of which are present in this case.

### C.

■ Bankruptcy courts in this district have applied equitable principles to four situations that this Court could identify.

First, some bankruptcy courts have granted a post-deadline extension if a creditor was prevented from making a timely filing due to extraordinary circumstances beyond its control. *See e.g. Promax Inv., LLC v. Choi (In re Choi),* 2012 WL 1298148 (Bankr.N.D.Ga.2012) (Murphy, B.J.) (finding that equitable tolling would be appropriate where a snowstorm hit north Georgia, but the clerk's office in Atlanta reopened before the roads cleared sufficiently for the attorney to access his offices in Suwanee, which is located farther north and suffered a greater impact from the weather); *but see Agrawal Inv., L.P. v. Ladha (In re Ladha),* 2011 WL 2516528 (finding that "[t]he Court will only step in under extreme circumstances with its equitable powers under § 105," and that a snowstorm in north Georgia that closed the courts for three days and limited them for another two days was not an extreme enough circumstance to condone the complaint being filed eight days after the courts reopened on a limited basis).

Secondly, equitable principles have been applied when the debtor's conscious culpability resulted in the creditor's missing of the deadline. *In re Choi,* 2012 WL 1298148, at *3 ("[E]quitable tolling is appropriate when the defendant actively misled the plaintiff or concealed grounds for a claim for relief. . . ."); *but see Byrd v. Alton (In re Alton),* 837 F.2d 457 (11th Cir.1988) (finding equitable remedies were not available where the debtor failed to list in the schedules a creditor with a claim conditioned upon a pending, but unresolved, state court trial).

Third, courts have excused a late filing and applied equitable tolling in instances centering around affirmative clerk error. *See e.g. In re Faillace,* Case No. A04–93282–PWB, slip op. at 6 (Bankr.N.D.Ga. Sept. 17, 2004) (Bonapfel, B.J.) (finding that no justification existed where there were no allegations of court error or defendant culpability); *In re Simpkins,* 448 B.R. 84, 92 (Bankr.N.D.Ga.2011) (Drake, B.J.) (observing that the court in *Alcatel Contracting, Inc. v. Slaughter Company & Associates,* 251 B.R. 437 (N.D.Ga.1999) distinguished the case before it from *Byrd,* noting that in *Byrd,* the court had not failed to fulfill a statutory duty to provide notice to a known creditor); *In re Hershkovitz,* 101 B.R. 816 (Bankr.N.D.Ga.1989) (Kahn, C.B.J.) (allowing equitable tolling where the creditor relied on the clerk's mistakenly issued second bar date, issued prior to the expiration of the first bar date).

Finally, the deadline period has been equitably tolled where the creditor did not gain actual knowledge of the bankruptcy until it was too late to act within the sixty day period. *See e.g. Ga. Lottery Corp. v. Koshy (In re Koshy),* 2010 WL 4226609 (Bankr.N.D.Ga.2010) (Diehl, B.J.) (denying a motion to dismiss where the creditor received less than a day's actual notice of the bankruptcy); *Strickland v. Barr (In re Barr),* 2009 WL 6499257 (Bankr.N.D.Ga. 2009) (Diehl, B.J.) (denying a motion to dismiss where the creditor received at most six days actual notice of the pending bankruptcy).

In this case, the Plaintiff fails to articulate any of the positions described above. It does not deny that it had notice of the deadline. In fact, the deadline had already been extended twice by consent order. Nor does it assert that the debtor affirmatively concealed or misled them or that the clerk's office made an irreparable error. Plaintiff's best argument is that computer error resulted in "extraordinary circumstances" beyond its control. This is not very persuasive. The Plaintiff admits that settlement negotiations ended on October 25, 2012, and yet, the Plaintiff waited until the night of November 19, 2012 (25 days

later) at 11:45 P.M. to begin uploading the complaint to the CM/ECF system. There is nothing "extraordinary" about computer "freezes." This is an event that happens everyday in both commercial and personal environments, and is the reason that modern computers have automatic file back-ups, and that nearly all commercial and governmental databases are backed up at external locations. Had the Plaintiff been a hair more diligent and prepared for just such an eventuality, this matter would not be at issue today. The Court finds it hard to accommodate a creditor's request for equitable tolling of a hard and fast deadline when that creditor sat on its hands and waited until the last moment to meet said deadline.

The issue in this case resembles that decided by Judge Bonapfel in *In re Faillace*, Case No. A04–93282–PWB, slip op. (Bankr.N.D.Ga. Sept. 17, 2004) (Bonapfel, B.J.). In that case, the creditor's attorneys summoned a courier to file their motion at 3:00 P.M. on the deadline date. *Id.* at 2. The courier arrived at the Clerk's office at 4:30, at which time the Clerk's office was closed. *Id.* First thing in the morning on the next day, the courier filed the creditor's motion, but the debtor opposed it for its late filing. *Id.* at 3. The creditor submitted to the court that the courier's actions were "unforeseen by [the creditor] and beyond the control of [the creditor]." *Id.* Judge Bonapfel disagreed, determining that the creditor "chose" to file a paper copy [14] and "chose" to hire a courier an hour before closing of the Clerk's office, and thus accepted the consequences associated with those choices. Likewise, in this case, Plaintiff's counsel chose to wait until 11:45 P.M. on the night of the deadline to begin uploading their pleadings, with full awareness of the risks and consequences associated with filing at such a late hour.

D.

The Plaintiff urges this Court to recognize that the filing was a mere two minutes and forty-four seconds late and that no unfair prejudice will be attributed to the Debtor in this case, and further requests that the Court use the powers inherent in Section 105 of the Code to apply equitable principles. In support of its position, the Plaintiff cites three cases from within the Eleventh Circuit that have found equitable remedies to be within a bankruptcy court's powers: *In re Phillips*, 288 B.R. 585 (Bankr.M.D.Ga.2002); *Penland v. Bryan (In re Bryan)*, 448 B.R. 866 (Bankr. M.D.Ga.2011); and *Bell v. Donnan (In re Donnan)*, 465 B.R. 340 (Bankr.M.D.Ga. 2012). Although none of these cases create mandatory precedent for this Court, nor are their authority as persuasive as those within the Court's own District, the Court finds it necessary to address them.

In *Phillips*, the court was struggling with whether or not to reopen a bankruptcy case to allow a determination as to the dischargeability of a debt. The court stated that it would not reopen the case if it was "futile" to do so, as strictly time barred cases would be, *Phillips*, 288 B.R. at 587, and the order did not hold that equitable remedies were actually available. The court stated only that it was persuaded that such an argument was not "frivolous," as to summarily judge it on a motion to reopen. *Id.* at 593. Additionally, in this case, the debtor allegedly had undertaken a long-term deception, one which was still in progress during the pendency of the bankruptcy case, *id.* at 587, and

14. In an age where electronic filings were necessary and mandatory in the District, the court was uncertain as to why the plaintiff filed a paper copy. *In re Faillace*, Case No. A04–93282–PWB, slip op. at 6 (Bankr. N.D.Ga. Sept. 17, 2004) (Bonapfel, B.J.).

would fall within the limited exception of conscious debtor culpability, available for courts that have recognized equitable tolling in this Circuit.

In *Bryan,* the debtor did not list the creditor in the schedules, nor was the creditor aware of the pending bankruptcy. *Penland v. Bryan,* 448 B.R. 866, 867 (Bankr.M.D.Ga.2011). Six days before the deadline, the debtor amended the schedules to include the creditor. *Id.* The creditor became aware with four days remaining, two of which were Saturday and Sunday and two of which were business days just prior to Thanksgiving. *Id.* at 869. Although, the court decided that equitable principles apply, it must be noted that it made this ruling, at least in part, based on 11 U.S.C. § 523(a)(3)(B), which excepts from discharge debts falling within 11 U.S.C. § 523(a)(2), (4), or (6) when the creditor did not receive notice nor have actual knowledge of the bankruptcy case with enough time to protect its interest by filing a motion or complaint. *Id.; see also* 11 U.S.C. § 523(a)(3)(B).

In *Donnan,* the creditor was encouraged by the debtor not to file an action against him. *Bell v. Donnan (In re Donnan),* 465 B.R. 340, 342 (Bankr.M.D.Ga.2012). The creditor accused the debtor of using a sphere of influence, derived from his special relationship as the creditor's former football coach, to induce this inaction. *Id.* Although that case recognized that equitable tolling had been used by the Court before, in *Bryan,* it determined that the key to equitable relief was a showing of some deception on the part of the debtor with regards to the dischargeability deadline, *Id.* at 344, and that absent this deception or actual fraud, no equitable relief could be granted.

All three cases to which the Creditor directs the Court have one theme in common. They require actual deception concerning the dischargeability deadline on the part of the debtor in a conscious effort to discourage any action pertaining to dischargeability. This is an exception that has found some limited traction in our own District, but nonetheless, the facts of this case do not subject themselves to that exception.

### E.

Generally, this Court prefers to rule on the merits of a case and not allow an issue of procedure to be outcome determinative. However, this Court is bound by the precedent set by the Eleventh Circuit, and even if it were not, admits that it would be hard pressed to dispose of this case under one of the limited recognizable exceptions to the time prescriptions of Rule 4007(c) and 9006(b).

The Court is not unaware of the severity of its ruling. Because of two minutes and forty-four seconds, the Plaintiff will find itself barred from objecting to the dischargeability of the debt in question. However, as the court in *Moseley* stated:

It is worth noting that this result is not as harsh as it may appear at first glance. There is a sound policy reason for permitting a creditor to extend the deadline for objecting to a debtor's discharge under § 727 even after the original deadline has expired. Many of the acts giving rise to the objection would not occur until after the petition date and, in some cases, after the original deadline has expired. For instance, a debtor is not entitled to a discharge if the debtor transfers, destroys, or conceals property of the estate after the petition date. But if the debtor transfers, destroys, or conceals the property after the deadline for objecting to a discharge, creditors would effectively be without any remedy were it not for the language in Rule 4004 permitting an en-

largement of time to object to the debtor's discharge after the original deadline has expired. The same is not true for determining the dischargeability of a particular debt under § 523.

Generally the acts giving rise to a nondischargeable debt occur prepetition. In fact, in many cases a creditor has already filed a lawsuit or even obtained a judgment for the underlying debt by the time that the bankruptcy case is filed. Once a case is filed, a creditor has a minimum of 60 (and more likely 80–100) days after the petition date—not to mention the time before the petition date—to investigate whether its debt is nondischargeable....

That only leaves situations where the acts giving rise to the nondischargeable debt occur postpetition (or worse, after the deadline for filing a complaint to determine the dischargeability of a debt). For instance, the Debtor may ... not have had an opportunity ... before the deadline for having its debt determined to be nondischargeable. Then again, it would not need to file a complaint to have its debt determined nondischargeable. That is because the discharge under § 727 only applies to prepetition debts.... So refusing to extend the deadline for seeking a determination of the dischargeability of a debt does not impact the diligent creditor.

*In re Moseley,* 470 B.R. 223, 227–228 (Bankr.M.D.Fla.2012).

### CONCLUSION

For the reasons set forth above, the Court must dismiss the Plaintiff's Complaint to Determine Dischargeability of Debt. Accordingly, it is

**ORDERED** that Debtor's Motion to Dismiss Complaint of United Community Bank to Determine Dischargeability of Debt is **GRANTED**.